Exhibit -F-

b.      The Confirmation Order shall be a Final Order.

c.      The Bankruptcy Court shall have made the statutorily-required findings of fact and conclusions of law in connection with the confirmation of the Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

d.      All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan and the Transaction shall have been executed and delivered in form and substance reasonably satisfactory to the Debtors, the First Lien Ad Hoc Group and the Purchasers.

e.      Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals, including to the extent required, approval of the Gaming Regulators and Governmental Authorities, required for the consummation of each of the transactions contemplated in the Plan and the Transaction shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

f.      All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or final orders of the Bankruptcy Court shall have been paid into and shall be held in escrow, free and clear of Liens, Claims and Encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

CONFIDENTIAL                                                                    LEGENDS0051606

   g.  All fees and expenses due to or incurred by professionals for the First Lien Agent and the First Lien Ad Hoc Group through the Effective Date that have not been previously paid shall have been paid in cash directly to each such professional.

   h.  The Transaction Fees due to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC shall have been paid in full in cash directly to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, as applicable.

   i.  All payments required by the Plan to be made on the Effective Date shall have been made.

   j.  The Closing as contemplated in the Purchase Agreement shall have occurred or shall occur on the Effective Date.

   k.  The New First Lien Credit Agreement and the New Second Lien Credit Agreement shall have been executed by the borrower and the guarantors under the New First Lien Credit Agreement and the New Second Lien Credit Agreement, the First Lien Agent and the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date.

   l.  The Debtors and the First Lien Ad Hoc Group shall have agreed on the Wind Down Budget, and sufficient funds for the payment of the Wind Down Expenses shall have been  transferred to the Liquidating Debtors.

   m.  To the extent required under applicable law, any orders respecting Mr. McEnery's individual bankruptcy case necessary to effectuate the terms of the Plan shall have been entered.

CONFIDENTIAL   LEGENDS0051607

**B.      FILING OF NOTICE OF EFFECTIVE DATE.**

Section 10.2 of the Plan provides that within two (2) Business Days after the occurrence of the Effective Date, the Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors in Possession reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**C.      WITHDRAWAL OF PLAN PRIOR TO THE CONFIRMATION DATE.**

Section 10.3 of the Plan provides that subject to the terms of the Plan Support Agreement, the Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Cases.  If the Plan is withdrawn prior to the Confirmation Date in accordance with this section, then the Plan shall be deemed withdrawn without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan shall be of no further force or effect, and (i) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and Claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any Claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

CONFIDENTIAL                                                                        LEGENDS0051608

# VI.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.   GENERAL TREATMENT.

Section 5.1 of the Plan provides the general treatment of executory contracts and unexpired leases. Specifically, Section 5.1 states:

(a)      As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtors, including but not limited to the Seller Excluded Contracts and the LRGP Excluded Contracts, shall be deemed to be rejected by the applicable Debtor as of the Effective Date, except for any executory contract or unexpired lease that: (i) previously has been assumed or assumed and assigned pursuant to an order of the Bankruptcy Court; (ii) is designated in the Purchase Agreement as a contract or lease to be assumed or assumed and assigned to Purchasers (such list of contracts and leases to be assumed, including post-petition contracts and leases assigned to Purchasers, as are described within the "Schedules of Assumed Contracts and Leases" attached to the Purchase Agreement as Schedules 1.1(a), 1.1(b), 1.1(d), 6.1(b) or as otherwise designated by the Purchasers pursuant to Section 2.6(e) of the Purchase Agreement); or (iii) is the subject of a separate motion to assume or assume and assign or to reject under Section 365 of the Bankruptcy Code approved by the Purchasers and pending on the Effective Date. For the avoidance of doubt, with the consent of the Purchasers, the Debtors may add any executory contract or unexpired lease to the Schedule of Assumed Contracts and Leases, thereby providing for the assumption or assumption and assignment of such executory contract or lease pursuant to the terms hereof, or move to reject any executory contract or unexpired lease (including any such contracts or leases on the Schedule of Assumed Contracts and Leases), thereby providing for its rejection pursuant to the terms hereof, at any time prior to the Effective Date. Listing a contract or lease in the Schedule of Assumed Contracts and Leases or rejecting

CONFIDENTIAL                                                                    LEGENDS0051609
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 4 of 41

any contract or lease shall not constitute an admission by the applicable Debtor that the applicable Debtor or the Purchasers has any liability thereunder.

(b)     Subject to section 5.2 of the Plan and to the occurrence of the Effective Date, entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute: (i) the approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption and/or assumption and assignment of the executory contracts and unexpired leases assumed and/or assigned and the post-petition contracts and leases assigned pursuant to section 5.1(a) and section 5.1(b) of the Plan; and (ii) the approval, pursuant to Sections 365(a) and 1123(b) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to section 5.1(a) and section 5.1(b) of the Plan. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that: (i) all defaults of the Debtors under each such assumed or assumed and assigned executory contract or unexpired leases shall be deemed cured with respect to each such assumed or assumed and assigned executory contract or unexpired leases, (ii) no remaining Cure Costs are due and owing and there is no compensation due for any actual pecuniary loss other than as may be established at the Cure Dispute Hearing (defined below) or set forth in the Assumption Notice (defined below), (iii) there is adequate assurance of future performance with respect to each such assumed or assumed and assigned executory contract or unexpired leases, (iv) such assumption or assumption and assignment is in the best interest of the applicable Debtor and its estate, (v) upon the Effective Date, the assumed or assumed and assigned executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, (vi) the counter party to each assumed or assumed and assigned executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed or assumed and

CONFIDENTIAL

LEGENDS0051610

assigned executory contract or unexpired lease; and (vii) the performance of each such assumed or assumed and assigned executory contract or unexpired lease after the Effective Date will be the responsibility of the Purchasers or Riverboat Gaming, as applicable, pursuant to 11 U.S.C. §363(k) and the Sellers shall have no further obligations thereunder. All executory contracts and unexpired leases assumed or assumed and assigned under the Plan or during the Chapter 11 Cases constitute valid contracts and leases, as applicable, enforceable by the Debtors or the Purchasers, as applicable, against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed, assumed or assigned, or rejected under the Plan or during the Chapter 11 Cases.

(c)      Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed or assumed and assigned under the Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Debtors' Estates.

## B.      REJECTION DAMAGE CLAIMS; DEADLINE FOR FILING.

Section 5.2 of the Plan provides that Rejection Damages Claims will be treated as Class 8 General Unsecured Claims and includes a deadline for filing any alleged rejection damage claims. Specifically, Section 5.2 provides:

(a)      *Treatment*:   Except as otherwise provided in the Plan, the Rejection Damage Claims, if any, will be treated as General Unsecured Claims in Class 8. All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Liquidating Debtors, the Assets, the Purchasers or their respective properties or interests in

CONFIDENTIAL                                                                                    LEGENDS0051611

property (and, for the avoidance of doubt, such rejected contracts and leases shall not constitute Assumed Liabilities or LRGP Retained Liabilities).

(b)     *Deadline: Each Person who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors or, if after the Effective Date, on the Liquidating Debtors, no later than the later of (i) thirty (30) days after the entry of an order for the rejection of such contract or lease or (ii) thirty (30) days after the Effective Date, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.*

## C.     CURE OF DEFAULTS IN ASSUMED LEASES AND CONTRACTS, OBJECTIONS TO CURE COSTS.

Section 5.3 of the Plan provides the procedure for curing defaults and a deadline for filing objections to proposed Cure Costs.  Specifically, Section 5.3 states:

(a)     *Assumption Notice*: The Debtors shall serve a notice (the "<u>Assumption Notice</u>") (which may be part of or included with the Schedule of Assumed Contracts and Leases) on the applicable counterparty of the potential, assumption, or assumption and assignment, of a executory contracts and unexpired leases that are anticipated to be assumed or assumed and assigned to the Purchasers (the "<u>Assumed Leases and Contracts</u>") in connection with the Transaction and the Cure Cost, if any; provided however, if the Debtors identify additional executory contracts and unexpired leases that might be assumed by the Debtors or, with the consent of the Purchasers, assumed and assigned to the Purchasers, the Debtors will promptly send a supplemental Assumption Notice to the applicable counterparties to such contract or lease.

(b)     *Time for Payment of Cure Costs*: The Debtors shall cure any monetary defaults

CONFIDENTIAL                                                                                    LEGENDS0051612

13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 7 of 41

arising under each executory contract and lease to be assumed or assumed and assigned to the Purchasers pursuant to section 5.1(a) or section 5.1(b) of the Plan, in accordance with Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost on the later of: (i) the Effective Date or as soon thereafter as is reasonably practicable; (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision at the Cure Dispute Hearing, subject, in any such case, to the terms and conditions of any Purchase Agreement) or as soon thereafter as is reasonably practicable; and (iii) such other date as mutually agreed upon by the Debtors, Purchasers, and the non-Debtor party or parties to each such Assumed Lease and Contract to be assigned to the Purchasers.

(c)    *Objections to Cure Costs:  Any Party that fails to timely object to the applicable Cure Cost by the deadline to object to the confirmation of the Plan: (a) shall be forever barred, estopped and enjoined from (x) disputing the Cure Cost relating to any executory contract or unexpired lease, (y) asserting any Claim against the applicable Debtor or the Purchasers or their properties arising under Section 365(b)(1) of the Bankruptcy Code; and (b) shall be deemed to have consented to the assumption or the assumption and assignment of such executory contract and unexpired lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Liquidating Debtors, the Purchasers or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or conditions to assumption or assumption and assignment of such executory contract or unexpired lease must be satisfied (pursuant to Section 365(b)(1) of the Bankruptcy Code or otherwise). Any objection relating to the Cure Cost shall specify the Cure Cost proposed by the counterparty to the applicable contract or lease.*

CONFIDENTIAL                                                                    LEGENDS0051613

(d)     *Cure Dispute Hearing:*   In the event of a timely objection (a "<u>Cure Dispute</u>") regarding: (i) any Cure Cost; (ii) the ability of the Debtors or the Purchasers to demonstrate "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under any contract or lease to be assumed or to be assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the Bankruptcy Court will consider any such objection during the Confirmation Hearing or as soon as practicable thereafter (a "<u>Cure Dispute Hearing</u>").   The Cure Costs required by Section 365(b)(1) of the Bankruptcy Code shall be paid at the time set forth section 5.3(b) of the Plan following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment. To the extent a Cure Dispute relates solely to a Cure Cost, the applicable Debtor may assume or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Debtors establish a reserve containing Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor in its judgment, and with consent of Purchasers in its sole discretion, then such contract or lease shall not be assumed or assumed and assigned under the Plan and the Debtors (or the Liquidating Debtors, if after the Effective Date) shall have the right to reject the applicable executory contract or unexpired lease effective as of the Effective Date after such determination at the Cure Hearing.

**D.     EMPLOYMENT AGREEMENTS**.

Section 5.4 of the Plan provides that on the Effective Date, the Debtors shall assume and assign to the Purchasers the Contracts of the employees listed in Schedule 6.1(b) of the Purchase

CONFIDENTIAL                                                                                    LEGENDS0051614

Agreement; however, to the extent as may be provided in the Purchase Agreement, the Purchasers shall not be obligated to assume the Contract of any employee who does not agree to waive any change of control payments or similar benefits that would otherwise accrue solely as a result of the consummation of the Transaction.

In regard to the employment contracts to be assumed and assigned, the employment contracts are those of the Debtors with current management. There are ten employment contracts outstanding with current management. The employment contracts have various expiration dates, with five contracts expiring in 2013 and five contracts expiring in 2014. Five of these contracts have change in control and/or severance provisions which provide for payments equal to the remainder of the contract plus six to twelve months salary and bonuses.

In regard to the other compensation and benefit plans, policies and programs, these are the same plans, policies and programs in place pre-petition, and approved and authorized by this Court in the *Order Granting Motion for Authority to Pay Employees' Pre-Petition Wages, Related Expenses, Benefits and Taxes* [P-52].  These plans, policies and programs include life insurance, short term and long term disability, dental, vision and medical plans.  To the extent these policies are assumed or assumed and assigned under the Plan, there are no cure costs associated with the assumption.

## VII.    EFFECT OF CONFIRMATION

### A.    VESTING OF ASSETS.

Section 9.1 of the Plan explains what assets vests in the Liquidating Debtors and the Purchasers, including Causes of Action and Avoidance Claims. Specifically, Section 9.1 states:

(a)    *Assets of the Debtors.* On and after the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, (i) all Assets of the Debtors sold to the Purchasers

CONFIDENTIAL                                                                                              LEGENDS0051615

pursuant to the Purchase Agreement and the Plan shall vest in the Purchasers free and clear of all Claims, Encumbrances, except for the Permitted Encumbrances, and (ii) all Assets of the Debtors that are not sold to the Purchasers pursuant to the Purchase Agreement and the Plan shall vest in the Liquidating Debtors.

(b)     *Avoidance Claims*. Except (i) for Assets of the Debtors, including Causes of Action, sold to the Purchasers pursuant to the Purchase Agreement, (ii) for Causes of Action that are released in the Plan, the Final Cash Collateral Order or any other Final Order and (iii) as otherwise provided in the Plan, the Final Cash Collateral Order or any other Final Order, any rights, claims, or Causes of Action of the Debtors or the Debtors in Possession pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including the Avoidance Claims, any rights to, claims, or Causes of Action, all claims and Causes of Action against any third parties including, without limitation to, any rights, claims, and Causes of Action, and any other Causes of Action shall, pursuant to the Plan, be retained by and vest in the Liquidating Debtors. The Debtors and the Liquidating Debtors shall not pursue any such Avoidance Claims for affirmative recoveries, but reserve all such Avoidance Claims for defensive purposes only, and may assert Avoidance Claims as defenses against and objections to Claims filed against any of the Debtors.

## B.     BINDING EFFECT.

Section 9.2 of the Plan provides that subject to the occurrence of the Effective Date on and after the occurrence of the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against or an Interest in any of the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

CONFIDENTIAL                                                                    LEGENDS0051616

## C.    DISCHARGE OF THE DEBTORS.

Section 9.3 of the Plan provides that except as otherwise specifically provided in the Plan or in the Confirmation Order, and except for the obligations of the Debtors, the Debtors in Possession, and the Liquidating Debtors under the Purchase Agreement and the Transaction which shall not be affected by this section 9.3 or otherwise released or waived by the Confirmation Order, the rights afforded in the Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Liquidating Debtors, the Assets, and the Purchasers, properties, or Interests in, or property of the Debtors, the Debtors in Possession, and the Liquidating Debtors or the Purchasers of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Liquidating Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under the Plan from the Liquidating Debtors and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of the Plan, and then only to the extent and in the manner specifically and expressly provided in the Plan.  All Entities are precluded and forever barred

CONFIDENTIAL                                                                    LEGENDS0051617
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 12 of 41

from asserting against the Debtors, the Debtors in Possession, the Liquidating Debtors, the Assets, or the Purchasers, properties, or Interests in or property of the Debtors, the Debtors in Possession, the Liquidating Debtors or the Purchasers of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under the Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of the Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

**D.      INDEMNIFICATION OBLIGATIONS**.

Section 9.4 of the Plan provides that all rights to indemnification from the Debtors or Liquidating Debtors, as applicable, whether pursuant to applicable law, certificates of incorporation, articles of incorporation or bylaws (or similar documents), indemnification agreements, contribution agreements or other agreements affording indemnity or similar protection to any person that are in effect immediately prior to the occurrence of the Effective Date shall terminate on the Effective Date without further action, and shall extinguish, discharge, and terminate any Claims or proofs of claim filed with respect to such indemnification, but without prejudice to the rights of any persons (i) under the prior or existing directors' and officers' liability insurance policies, or (ii) for indemnity from the Debtors or Liquidating Debtors, as applicable, up to the amount of, and payable solely from, the proceeds of prior or existing directors' and officers' liability insurance policies.

CONFIDENTIAL                                                              LEGENDS0051618

**E.     TERM OF CERTAIN INJUNCTIONS.**

Section 9.5 of the Plan provides that unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 Cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by the Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

**F.     PRESERVATION OF ALL CAUSES OF ACTION NOT EXPRESSLY SETTLED, RELEASED OR TRANSFERRED.**

Section 9.10 of the Plan provides that for the avoidance of doubt, and without limiting or restricting any other provisions of the Plan, including but not limited to section 9.1 of the Plan, unless a claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised, settled or transferred in the Plan, the Final Cash Collateral Order or any other Final Order, (i) the Liquidating Debtors expressly reserve claims or Causes of Action which vest in the Liquidating Debtors and (ii) the Purchasers expressly reserve claims or Causes of Action which vest in Purchasers under the Purchase Agreement and the Transaction, for adjudication or pursuit by the Liquidating Debtors or Purchasers, as applicable, after the Effective Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.  The Liquidating Debtors and, as applicable, the

CONFIDENTIAL                                                                          LEGENDS0051619

13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 14 of 41

Purchasers expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors or the Debtors in Possession which vest in the Liquidating Debtors or, as applicable, the Purchasers under the Plan, the Purchase Agreement or the Transaction, as trustees for or on behalf of the creditors, not specifically and expressly waived, relinquished, released, compromised, settled or transferred in the Plan, the Final Cash Collateral Order or any other Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Liquidating Debtors or, with respect to claims or Causes of Action which vest in Purchasers under the Purchase Agreement and the Transaction, the Purchasers shall be representatives of the Estates appointed for the purpose of pursuing any and all such claims and Causes of Action under 11 U.S.C. §1123(b)(3)(B).

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Liquidating Debtors or, as applicable, the Purchasers subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised, settled or transferred in the Plan, the Final Cash Collateral Order or any other Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

CONFIDENTIAL                                                                                 LEGENDS0051620

For the avoidance of doubt, the terms of the Purchase Agreement and the Transaction shall control regarding Assets transferred to the Purchasers.

## G.    INSURANCE NEUTRALITY.

Section 9.11 of the Plan provides that except as may otherwise be provided by applicable bankruptcy or non-bankruptcy laws, nothing contained in the Plan shall in any way operate to, or have the effect of, impairing, supplementing, expanding, decreasing, or modifying: (A) the rights of any of the Debtors' insurers, including but not limited to Zurich American Insurance Company ("ZAIC") or any other affiliate of ZAIC (collectively, "Zurich" and together with all other entities that are providing or have provided insurance to the Debtors or any affiliate or predecessor of the Debtors, the "Insurers"); (B) the rights of claimants against any Insurers for recovery of Claims solely from such Insurers, (C) the rights of Cannon Cochran Management Services, Inc. (CCMSI), which has served as a Third-Party Administrator with regard to certain policies of insurance issued by Zurich to the Debtors; or (D) any rights or obligations arising under any insurance policy issued to the Debtors or under which the Debtors may seek coverage (the "Policies") or Claimants may seek recovery. For all issues of insurance coverage or otherwise, except as may otherwise be provided by applicable bankruptcy or non-bankruptcy laws, the provisions, terms, conditions, and limitations of the Policies shall control.

## VIII.    RELEASES AND EXCULPATIONS

### A.    RELEASES BY THE DEBTORS AND THEIR ESTATES.

Section 9.7 of the Plan contains the following provisions regarding releases of claims by the Debtors and their Estates:

*RELEASE OF DEBTORS' ESTATES' CLAIMS.  AS OF THE EFFECTIVE DATE, AND SUBJECT TO ITS OCCURRENCE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, ANY AND*

CONFIDENTIAL                                                                    LEGENDS0051621
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 16 of 41

*ALL CAUSES OF ACTION OF THE DEBTORS, DEBTORS IN POSSESSION AND THE DEBTORS' ESTATES AGAINST ANY OF THE RELEASED PARTIES BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE SHALL BE FOREVER RELEASED AND DISCHARGED.  THE FOREGOING RELEASES, HOWEVER, SHALL NOT (1) WAIVE ANY DEFENSES TO ANY CLAIMS ASSERTED AGAINST THE DEBTORS BY ANY RELEASED PARTIES EXCEPT TO THE EXTENT SUCH CLAIMS HAVE BEEN SPECIFICALLY ALLOWED IN THE PLAN OR BY A FINAL ORDER OF THE BANKRUPTCY COURT, OR (2) RELEASE ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY, OR (3) RELEASE ANY CLAIMS, CAUSES OF ACTION, OBLIGATIONS, LIABILITIES, OR RESPONSIBILITIES UNDER THE PLAN, THE PURCHASE AGREEMENT, THE NEW FIRST LIEN CREDIT AGREEMENT, THE NEW SECOND LIEN CREDIT AGREEMENT OR ANY AND ALL RELATED DOCUMENTS IN CONNECTION THEREWITH AGAINST THE PURCHASERS OR ANY OF THEIR DIVISIONS, AFFILIATES, AND THEIR FORMER, PRESENT AND FUTURE OFFICERS, DIRECTORS, SERVANTS, SHAREHOLDERS, MEMBERS, AFFILIATES, MANAGERS, PARTNERS, EMPLOYEES, AGENTS, REPRESENTATIVES, PROFESSIONALS AND CONSULTANTS. NO CAUSE OF ACTION THAT IS RELEASED UNDER THE PLAN SHALL BE SOLD, ASSIGNED OR TRANSFERRED TO THE PURCHASERS, EITHER PURSUANT TO THE PLAN OR THE PURCHASE AGREEMENT.*

CONFIDENTIAL   LEGENDS0051622

The "Released Parties" as defined in the Plan are (i) the Debtors, Debtors in Possession and Liquidating Debtors, and their respective financial advisors, attorneys and accountants whose retention has been approved by the Bankruptcy Court, and all past, present and future officers, directors, servants, shareholders, members, managers, partners, employees, agents, representatives and consultants thereof; (ii) the Consenting First Lien Lenders, the First Lien Agent, the First Lien Ad Hoc Group, and each of their divisions, affiliates, and their former, present and future officers, directors, servants, shareholders, members, affiliates, managers, partners, employees, agents, representatives, professionals and consultants; (iii) the Purchasers, and each of their divisions, affiliates, and their former, present and future officers, directors, servants, shareholders, members, affiliates, managers, partners, employees, agents, representatives, professionals and consultants; and (iv) Michael E. Kelly (if the Michael Kelly Claims Settlement Consideration is paid to the Debtors' Estates in full and in cash on or before the Effective Date).

The Debtors do not believe that any valid potential actions exist against the Released Parties with regard to the foregoing released claims.  The Debtors have not pursued any potential actions against the Released Parties arising from any transactions.   Additionally, the Debtors believe that litigation over the validity of any theoretically potential claims against the Released Parties based upon the foregoing released claims would require a significant expenditure of the Debtors' time and resources and could unnecessarily impair the Debtors' businesses and the administration of the Chapter 11 Cases.

**B.      RELEASE BY HOLDERS OF CLAIMS.**

Section 9.8 of the Plan contains the following provisions regarding releases of claims by holders of Claims:

CONFIDENTIAL                                                                         LEGENDS0051623
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 18 of 41

*RELEASE BY HOLDERS OF CLAIMS. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO HAS VOTED TO ACCEPT THE PLAN SHALL BE DEEMED TO HAVE UNCONDITIONALLY RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ON ACCOUNT OF ANY RELATIONSHIP WITH THE DEBTORS OR ON ACCOUNT OF ANY CLAIM, EXCEPT FOR (I) WITH RESPECT TO THE LIQUIDATING DEBTORS, CLAIMS WHICH ARE OR BECOME ALLOWED CLAIMS AND ARE TO BE PAID AS PROVIDED PURSUANT TO THE PLAN, (II) CLAIMS BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE RELEASED PARTIES, AND (III) ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY, OR (3) RELEASE ANY CLAIMS, CAUSES OF ACTION, OBLIGATIONS, LIABILITIES, OR RESPONSIBILITIES UNDER THE PLAN, THE PURCHASE AGREEMENT, THE NEW FIRST LIEN CREDIT AGREEMENT, THE NEW SECOND LIEN CREDIT AGREEMENT OR ANY AND ALL RELATED DOCUMENTS IN CONNECTION THEREWITH AGAINST THE PURCHASERS OR ANY OF THEIR DIVISIONS, AFFILIATES, AND THEIR*

CONFIDENTIAL                                                                                           LEGENDS051624
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 19 of 41

*FORMER, PRESENT AND FUTURE OFFICERS, DIRECTORS, SERVANTS, SHAREHOLDERS, MEMBERS, AFFILIATES, MANAGERS, PARTNERS, EMPLOYEES, AGENTS, REPRESENTATIVES, PROFESSIONALS AND CONSULTANTS.*

The Debtors believe the releases set forth in the Plan are reasonable and appropriate given the facts and circumstances of these cases. Moreover, the releases are voluntary and are supported by the consideration provided under the Plan.

**C.   EXCULPATION.**

Section 9.9 of the Plan provides standard exculpations for key parties involved in the Debtors' restructuring efforts under Chapter 11. Specifically, section 9.9 of the Plan provides:

*EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE MAXIMUM EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES, THE DEBTORS, THE DEBTORS IN POSSESSION AND THE LIQUIDATING DEBTORS SHALL HAVE NO LIABILITY TO ANY ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES, EXCEPT FOR CLAIMS BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. IN ALL RESPECTS, EACH OF THE FOREGOING SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL*

CONFIDENTIAL
LEGENDS0051625

*WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES WITH RESPECT TO THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES.*

D.    **NO SUCCESSOR LIABILITY.**

Section 9.6 of the Plan provides that unless otherwise specifically provided in the Purchase Agreement, Plan or the Confirmation Order, none of the Debtors, the Liquidating Debtors, the First Lien Agent, the First Lien Ad Hoc Group, the First Lien Lenders or the Purchasers will have any successor liability obligations.  Specifically, the Plan provides:

*EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR IN THE PLAN OR THE CONFIRMATION ORDER, AND TO THE MAXIMUM EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES, THE DEBTORS, THE DEBTORS IN POSSESSION AND THE LIQUIDATING DEBTORS SHALL HAVE NO LIABILITY TO ANY ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THE PLAN, THE ADMINISTRATION OF*

CONFIDENTIAL    LEGENDS0051626

*THE PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES, EXCEPT FOR CLAIMS BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.  IN ALL RESPECTS, EACH OF THE FOREGOING SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES WITH RESPECT TO THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES.*

## IX.  CERTAIN MISCELLANEOUS AND OTHER PROVISIONS

### A.  PAYMENT OF STATUTORY FEES.

Section 11.1 of the Plan provides that all fees and expenses payable pursuant to Section 1930 of title 28 of the United States Code shall be paid after the Effective Date by the Liquidating Debtors, as, when and in the amount as required by applicable law, until the Bankruptcy Court enters a Final Decree.

### B.  PENSION PLANS.

Section 11.2 of the Plan provides that for avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Purchasers  shall continue to

{00328179-10}                                      D-83

pay all retiree benefits of the Debtors (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which such Debtors had obligated themselves to provide such benefits.  Nothing herein shall: (i) restrict the Purchasers' right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or Section 1144(m) of the Bankruptcy Code; or (ii) be construed as an admission that any such retiree benefits are owed by the Debtors or Purchasers.

## C.      GOVERNING LAW.

Section 11.5 of the Plan provides that unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Louisiana, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements, or documents.  For the avoidance of doubt, the governing law provisions of the Purchase Agreement, the New First Lien Credit Agreement and the New Second Lien Credit Agreement shall control with respect to those agreements.

## D.      EXEMPTION FROM TRANSFER TAXES.

Section 11.7 of the Plan provides that pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, the making or delivery of any mortgage, deed of trust, other security interest, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan or the Transaction, and the

CONFIDENTIAL                                                        LEGENDS0051628
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 23 of 41

consummation of the Transaction shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

### E.   EXEMPTION FROM SECURITIES LAW.

Section 11.8 of the Plan provides that distributions pursuant to the Plan and the offer, issuance, sale or purchase of the Riverboat Gaming Interests under the Plan shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Section 1145 of the Bankruptcy Code or other applicable law. Purchasers shall be deemed to qualify as a successor to the Debtors under the Plan for purposes of Section 1145 of the Bankruptcy Code and Distributions and the offer, issuance, sale or purchase of the Riverboat Gaming Interests under the Plan shall be deemed to satisfy the other requirements of Section 1145(a)(l) of the Bankruptcy Code and therefore be exempt from registration under the Securities Act and any federal, state or local securities law, rule or regulation.

The entry of the Confirmation Order shall constitute findings of fact and conclusions of law that any Released Party who solicits or participates in the offer, issuance, sale or purchase of the Riverboat Gaming Interests under the Plan, is in good faith and has complied with the applicable provisions of the Bankruptcy Code, and is not liable, on account of such solicitation or participation, for any violation of an applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale or purchase of any securities, including but not limited to the Riverboat Gaming Interests, under the Plan.

### F.   MODIFICATION AND AMENDMENT OF THE PLAN.

Section 11.11 of the Plan provides that subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, the Plan may be amended or modified by the Debtors at any time, and, after the Effective Date, by the Liquidating Debtors, *provided* that, notwithstanding the foregoing, no amendments or

{00328179-10}                                   D-85

CONFIDENTIAL                                                                      LEGENDS0051629

modifications which affect the rights or obligations of the First Lien Ad Hoc Group, the First Lien Agent or Purchasers may be made to the Plan after confirmation without the approval of the First Lien Ad Hoc Group, First Lien Agent, and the Purchasers, which approval may be granted or withheld in their respective sole discretion.

## G.    NONVOTING STOCK.

Section 11.12 of the Plan provides that to the extent required by Section 1123(a)(6) of the Bankruptcy Code, the certificates of incorporation or articles of organization of any corporate Liquidating Debtors shall be deemed to prohibit the issuance of nonvoting equity securities by each such  Liquidating Debtor, subject to further amendment of such certificates of incorporation or articles of organization as permitted by applicable law.

## X.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and certain U.S. holders of Claims and Interests. The following summary does not address the U.S. federal income tax consequences to holders whose Claims are unimpaired or otherwise entitled to payment in full in cash under the Plan (*e.g.,* Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims and Allowed Priority Claims).

**The following summary is based on the Internal Revenue Code of 1986, as amended (the "_Tax Code_"), Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service (the "_IRS_"), all as in effect on the date hereof.  Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the tax consequences described below.**

CONFIDENTIAL                                                                                  LEGENDS0051630
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 25 of 41

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section.  Certain tax aspects of the Plan are uncertain due to the lack of applicable regulations and other tax precedent.  The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.

This summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to the particular circumstances of any holder or to holders subject to special income tax rules (such as S corporations, regulated investment companies, insurance companies, financial institutions, small business investment companies, broker-dealers and tax-exempt organizations).  In addition, the discussion does not apply to holders of Claims and Interests that are not "U.S. Persons" (as such phrase is defined in the Tax Code).  The use of the terms "holder" or "U.S. holder" herein shall refer to a "holder of a Claim or Interest that is a U.S. Person."

The following discussion is a general summary of certain federal income tax aspects of the Plan to U.S. holders, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest.

**EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN SHOULD CONSULT HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST.  THIS INFORMATION MAY NOT BE USED OR**

CONFIDENTIAL                                                                LEGENDS0051631

QUOTED IN WHOLE OR IN PART IN CONNECTION WITH ANY OFFERING FOR SALE OF SECURITIES.

TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND ANY INTERESTS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE TAX CODE, AND (b) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH THE PROMOTION OF THE PLAN.

### 1. Tax Consequences To The Debtors

The Debtors are limited liability companies that do not recognize gain or loss at the entity level. Instead, the tax attributes and any resultant gain or loss by virtue of the Debtors' operations are passed through to the Debtors' Interest holders. Accordingly, the pro-formas attached to this Disclosure Statement do not reflect any tax consequences to the Debtors because of the implementation of the Plan.

### 2. Tax Consequences To Certain Holders Of Claims And Equity Interests

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD CONSULT THEIR TAX ADVISOR TO DETERMINE THE AMOUNT AND TIMING OF ANY INCOME OR LOSS SUFFERED AS A RESULT OF THE CANCELLATION OF THE CLAIMS OR STOCK OPTIONS HELD BY SUCH PERSON, WHETHER SUCH INCOME OR LOSS IS ORDINARY OR CAPITAL AND THE TAX EFFECT OF ANY RIGHT TO, AND RECEIPT OF DEFERRED PAYMENT.

THE ABOVE DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES

CONFIDENTIAL                                                    LEGENDS0051632
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 27 of 41

UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, ALL HOLDERS SHOULD CONSULT THEIR TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## XI.      CONFIRMATION PROCEDURE

### 1.      Voting And Other Procedures

A Ballot for the acceptance or rejection of the Plan is enclosed with the Disclosure Statement submitted to the holders of Claims and Interests that are entitled to vote to accept or reject the Plan.

After notice and a hearing on _____, 2012, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the creditors to make an informed judgment whether to accept or reject the Plan.

HOWEVER, APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. ALL CREDITORS AND HOLDERS OF INTERESTS SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.

Pursuant to the provisions of the Bankruptcy Code, only holders of claims or interests in classes of claims or interests that are impaired under the terms and provisions of a chapter 11 plan and are to receive distributions thereunder are entitled to vote to accept or reject the plan. Classes in which the holders of claims or interests will not receive or retain any property under a Chapter 11 plan are deemed to have rejected the plan and are not entitled to vote to accept or

CONFIDENTIAL                                                                LEGENDS0051633
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 28 of 41

reject the plan.  Classes of claims or interests in which the holders of claims or interests are unimpaired under a Chapter 11 plan are deemed to have accepted the plan and also are not entitled to vote to accept or reject the plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of: (i) claims, as acceptance by creditors actually voting in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims; and (ii) interests, as acceptance by interest holders in that class actually voting that hold at least two-thirds in number of such interests.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or procured in good faith or otherwise in accordance with the provisions of the Bankruptcy Code.

With respect to the Plan, any creditor in an impaired Class (i) whose Claim has been listed by the Debtors in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) who filed a proof of claim on or before the Bar Date, if any, (or, if not filed by such date, any proof of claim filed within any other applicable period of limitations or with leave of the Bankruptcy Court), which Claim has not been disallowed and is not the subject of an objection, is entitled to vote.  Holders of Claims that are disputed, contingent and/or unliquidated are entitled to vote their Claims only to the extent that such Claims are Allowed for the purpose of voting pursuant to an order of the Bankruptcy Court.  The Debtors believe that any Class of impaired, Secured Claims that does not vote to accept or reject the Plan is deemed to accept the Plan, and intend to seek such a determination at the Confirmation Hearing.

Under the Bankruptcy Code, a plan does not have to be accepted by every class of claims or interests to be confirmed.   If a class of claims or interests rejects a plan or is deemed to reject

CONFIDENTIAL                                                              LEGENDS0051634
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 29 of 41

the plan, the plan proponent has the right to request confirmation of the plan pursuant to Section 1129(b) of the Bankruptcy Code -- the so-called "cramdown" provision of the Bankruptcy Code. Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims or interests.  Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class, and meets the other legal criteria for confirmation.

With respect to the Plan, if one or more of the Classes entitled to vote on the Plan votes to reject the Plan, the Debtors intend to request confirmation of the Plan notwithstanding the rejection of such Class or Classes.  In so doing, the Debtors will seek to establish that the Plan complies with the best interest of creditors test with respect to any such Class or Classes, and satisfies all other legal criteria for confirmation.

After carefully reviewing this Disclosure Statement, including any Exhibits, each holder of an Allowed Claim or Interest entitled to vote may vote whether to accept or reject the Plan.  A Ballot for voting on the Plan accompanies this Disclosure Statement.  If you hold a Claim or Interest in more than one Class and you are entitled to vote Claims or Interests in more than one Class, you are entitled to receive a Ballot or Ballots which will permit you to vote in all appropriate Classes.

Please vote and return your Ballot to the Voting Agent as follows:

**By U.S. Mail, Delivery or Courier:**

**Kurtzman Carson Consultants LLC**
**Attention: Legends Ballot Processing**
**2335 Alaska Avenue**
**El Segundo, CA 90245**

CONFIDENTIAL                                                                                   LEGENDS0051635
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 30 of 41

**ANY EXECUTED BALLOT THAT FAILS TO INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.  BALLOTS RETURNED TO THE DEBTORS' VOTING AGENT BY FACSIMILE TRANSMISSION OR ANY OTHER ELECTRONIC MEANS WILL NOT BE COUNTED BY THE DEBTORS' VOTING AGENT.**

**Ballots must be *received* by the Voting Agent by the Voting Deadline.**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., PACIFIC TIME ZONE, ON _____, 2012.**

If a Ballot is received after the Voting Deadline, it will not be counted unless otherwise ordered by the Bankruptcy Court.  Complete the Ballot by providing all the information requested, and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Debtors' Voting Agent at the address set forth above.

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN THE TIME AND DATE SET FORTH IN THE ACCOMPANYING NOTICE.**

**If you are entitled to vote on the Plan and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan or submitting your ballot, you may telephone the Voting Agent at the following telephone number:  1-866-381-9100.**

2.   The Confirmation Hearing On The Plan

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing with respect to the accompanying Plan.  The Confirmation Hearing in respect of the

CONFIDENTIAL                                                                                    LEGENDS0051636
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 31 of 41

Plan has been scheduled for the date and time set forth in the accompanying notice before the Honorable Stephen V. Callaway, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Western District of Louisiana, 300 Fannin St., Courtroom 4, Fourth Floor, Shreveport, LA 71101.   The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice other than an announcement of the adjourned date made at the Confirmation Hearing or posted at the courthouse at the Confirmation Hearing. Any objection to confirmation must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim or a description of the interest in the Debtors held by the objector, and must be made in accordance with any pre-trial or scheduling orders entered by the Bankruptcy Court.  Any such objections must be filed in the record of the Chapter 11 Cases on or before the date and time set forth in the accompanying notice.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are met.   Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors that are impaired under the plan.

### 3.   Unfair Discrimination And Fair And Equitable Tests

To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting Class.  The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable."   The Bankruptcy Code establishes "cram down"

CONFIDENTIAL                                                                                     LEGENDS051637

tests for classes of secured creditors, unsecured creditors and equity holders which do not accept the plan, as follows:

### i.      Secured Creditors

Either (a) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments (x) totaling at least the allowed amount of the secured claim and (y) having a present value at least equal to the value of the secured creditor's collateral, (b) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (c) the property securing the claim is sold free and clear of liens with the secured creditor's lien to attach to the proceeds of the sale and such lien on proceeds is treated in accordance with clause (a) or (b) of this subparagraph.

### ii.     Unsecured Creditors

Either (a) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim, or (b) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan, and the "best interest" test is met so that each impaired unsecured creditor recovers at least what that creditor would receive if the case was converted to a chapter 7 case.

### iii.    Holders of Interests

Either (a) each impaired equity interests receives or retains under the plan property of a value equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) no junior interest receives or retains any property, and the "best interest" test is met so that each impaired interest holder recovers at least what that interest holder would receive if the case was converted to a chapter 7 case.

CONFIDENTIAL                                                                    LEGENDS051638

### iv.       No Unfair Discrimination

In addition, the "cram down" standards of the Bankruptcy Code prohibit "unfair discrimination" with respect to the claims of an impaired, non-accepting class. While the existence of "unfair discrimination" under a chapter 11 plan depends upon the particular facts of a case and the nature of the claims at issue, in general, courts have interpreted the standard to mean that the impaired, non-accepting class must receive treatment under a chapter 11 plan which allocates value to such class in a manner that is consistent with the treatment given to other classes with similar legal claims against the debtor.

In the event that all impaired Classes do not accept the Plan, the Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan with respect to any Class which does not accept the Plan

### 4.   Feasibility Of Plan

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization unless the liquidation of the debtor is provided for in the plan.  It is not likely that the confirmation of the Plan will be followed by liquidation or the need for further financial reorganization of the Debtors.  Attached as Exhibit D-2 to this Disclosure Statement, entitled, "Financial Projections," is information reflecting the Purchasers' projected cash flow after the sale of substantially all of the Debtors' assets under the Plan, demonstrating the ability of the Purchasers to operate their businesses and make the payments required under the Plan.

### 5.   Best Interests Test

In order to confirm a chapter 11 plan, the Bankruptcy Court must determine that the plan is in the best interests of all classes of creditors and equity security holders impaired under that

CONFIDENTIAL                                                                                 LEGENDS0051639

plan. The "best interests" test requires that the Bankruptcy Court find that the plan provides to each member of each impaired class of claims and interests (unless each such member has accepted the plan) a recovery which has a value at least equal to the value of the distribution that each creditor or interest holder would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.   If these Chapter 11 Cases were converted to chapter 7 cases, a trustee would be appointed to liquidate the assets of the Debtors.   In liquidation under chapter 7, before creditors receive any distributions, additional administrative expenses involved in the appointment of a trustee, including the statutory fee to a chapter 7 trustee under Section 326(a) of the Bankruptcy Code, and attorneys, accountants and other professionals to assist a trustee, would cause a substantial increase in the administrative expenses of the Debtors' Estates.   The Debtors' assets available for distribution to creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority status.   As demonstrated in the Liquidation Analysis attached as Exhibit D-3 to this Disclosure Statement, the Debtors believe that the Plan provides to each creditor and Interest holder a value at least equal to the value of the distribution that each creditor or interest holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

**6.   Certain Risk Factors To Be Considered**

**HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN (AND ANY DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE), BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   THESE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY**

CONFIDENTIAL                                                                LEGENDS0051640
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 35 of 41

**RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

    **7. Certain Bankruptcy Considerations**

        **i.      Risk of Liquidation of the Debtors' Estates**

If the Plan is not confirmed and consummated, there can be no assurance that Debtors' Chapter 11 Cases will continue as chapter 11 cases rather than be converted to Chapter 7 liquidations, or that any alternative chapter 11 plan would be on terms as favorable or more favorable to holders of Claims and Interests as the terms of the Plan.

        **ii.     Risk of Non-Occurrence of the Effective Date**

The occurrence of the Effective Date is conditioned upon the happening of certain events. Alternatively, if one or more of these certain events do not occur, the Debtors, the First Lien Ad Hoc Group and the Purchasers acting jointly may waive the requirement that such events occur (but that consent can be withheld by any of these parties in its sole discretion). Specifically, Article 10 of the Plan provides for the following conditions precedent to the occurrence of the Effective Date, and there is no guaranty that all of these events will occur or that those that do not occur will be waived:

- The Confirmation Order and the Plan as confirmed pursuant to the Confirmation Order and Filed shall be in a form and substance reasonably satisfactory to the Debtors, the First Lien Ad Hoc Group and the Purchasers.

- The Confirmation Order shall be a Final Order.

- The Bankruptcy Court shall have made the statutorily-required findings of fact and conclusions of law in connection with the confirmation of the Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

- All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan and the Transaction

CONFIDENTIAL                               LEGENDS0051641

shall have been executed and delivered in form and substance reasonably satisfactory to the Debtors, the First Lien Ad Hoc Group and the Purchasers.

- Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals, including to the extent required, approval of the Gaming Regulators and Governmental Authorities, required for the consummation of each of the transactions contemplated in the Plan and the Transaction shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

- All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or final orders of the Bankruptcy Court shall have been paid into and shall be held in escrow, free and clear of Liens, Claims and Encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

- All fees and expenses due to or incurred by professionals for the First Lien Agent and the First Lien Ad Hoc Group through the Effective Date that have not been previously paid shall have been paid in cash directly to each such professional.

- The Transaction Fees due to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC shall have been paid in full in cash directly to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, as applicable.

- All payments required by the Plan to be made on the Effective Date shall have been made.

- The Closing as contemplated in the Purchase Agreement shall have occurred or shall occur on the Effective Date.

- The New First Lien Credit Agreement and the New Second Lien Credit Agreement shall have been executed by the borrower and the guarantors under the New First Lien Credit Agreement and the New Second Lien Credit Agreement, the First Lien Agent and the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date.

- The Debtors and the First Lien Ad Hoc Group shall have agreed on the Wind Down Budget, and sufficient funds for the payment of the Wind Down Expenses shall have been transferred to the Liquidating Debtors.

- William J. McEnery in his personal capacity currently is a debtor in a chapter 7 case pending in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 11-25934) (the "Illinois Bankruptcy Court").  Accordingly, the Plan includes a condition precedent to the occurrence of the Effective Date that to the extent required under applicable law, any orders respecting Mr. McEnery's individual bankruptcy case necessary to effectuate the terms of the Plan shall have been entered.

CONFIDENTIAL                                                                                      LEGENDS0051642

### iii. Uncertainty Regarding Objections to Claims

The Plan provides that certain objections to Claims (other than Allowed Claims) may be filed with the Bankruptcy Court after the Effective Date.  A creditor that does not hold an Allowed Claim may not know that its Claim will be objected to until after the Effective Date.

### iv. Performance of Plan Obligations by the Liquidating Debtors

The Debtors believe that the Liquidating Debtors can successfully perform all of their obligations under the Plan.  However, there is no assurance that the Liquidating Debtors will do so. If the Liquidating Debtors are unable to comply with their obligations under the Plan, then there could possibly be a subsequent bankruptcy of the Liquidating Debtors.

### 8. Disclaimers And Endorsements

This Disclosure Statement contains information about the Plan.  Creditors and the holders of Interests are urged to study the text of the Plan carefully to determine the Plan's impact on their claims or interests and to consult with their financial, tax and legal advisors.

Nothing contained in this Disclosure Statement or the Plan will be deemed an admission or statement against interest that can be used against the Plan Proponents in any pending or future litigation.  Any reference to a creditor's Claims in this Disclosure Statement is not an admission that such creditors hold Allowed Claims, or will be an admission with respect to the validity, priority, or extent of any alleged Lien, Claim, Priority or encumbrance.

Certain statements and assertions in this Disclosure Statement may be subject to dispute by parties in interest.

## XII.   CONCLUSION AND RECOMMENDATION

The Debtors believe that confirmation and implementation of the Plan are preferable to any alternative and that the Plan provides the best alternative for the Debtors to emerge from the

CONFIDENTIAL                                                                LEGENDS0051643

13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 38 of 41

Chapter 11 Cases and for resolving the Debtors' financial difficulties.   Any other alternative would involve significant delay, litigation, uncertainty, and substantial additional administrative costs.   **THE DEBTORS URGE HOLDERS OF IMPAIRED CLAIMS AND INTERESTS WHO ARE ENTITLED TO VOTE TO VOTE IN FAVOR OF THE PLAN.**

**[Remainder of page intentionally left blank]**

{00328179-10}                                     D-100

Dated: _____, 2012.

**DISCLOSURE STATEMENT FILED BY:**

Louisiana Riverboat Gaming Partnership
Legends Gaming of Louisiana-1, LLC
Legends Gaming of Louisiana-2, LLC
Legends Gaming, LLC
Legends Gaming of Mississippi, LLC
Legends Gaming of Mississippi RV Park, LLC

BY: _____
        THEIR CHIEF EXECUTIVE OFFICER

_____
William H. Patrick, III, La. Bar No. 10359
Tristan Manthey, La. Bar No. 24539
Cherie Dessauer Nobles, La. Bar No. 30476
**HELLER, DRAPER, PATRICK & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
Email: wpatrick@hellerdraper.com
       tmanthey@hellerdraper.com
       cnobles@hellerdraper.com

As counsel to the Debtors and Debtors in Possession

_____
Marc B. Hankin
**JENNER & BLOCK LLP**
919 Third Ave.
37th Floor
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699

As special counsel to the Debtors and Debtors in Possession

CONFIDENTIAL           LEGENDS0051645
13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 40 of 41

## NOTICE ANNEX

Pursuant to 11 U.S.C. § 342, the following sets forth the name, addresses and last four digits of the tax identification number for each of the referenced debtors and debtors in possession:

| DEBTORS AND ADDRESSES | CASE NO. | TAX I.D. NO. |
|---|---|---|
| Louisiana Riverboat Gaming Partnership<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12013 | xx-xxx5811 |
| Legends Gaming of Louisiana-1, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12014 | xx-xxx3064 |
| Legends Gaming of Louisiana-2, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12015 | xx-xxx3099 |
| Legends Gaming, LLC<br>7670 Lake Mead Blvd., Ste. 145<br>Las Vegas, NV 89128-6651 | 12-12017 | xx-xxx7524 |
| Legends Gaming of Mississippi, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12019 | xx-xxx3167 |
| Legends Gaming of Mississippi RV Park, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12020 | xx-xxx8765 |

CONFIDENTIAL                                                                                    LEGENDS0051646

13-01007 - #99-5  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 4) Pg 41 of 41