(c)     Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed or assumed and assigned under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Debtors' Estates.

**5.2     *Rejection Damage Claims; Deadline for Filing.***

(a)     *Treatment*:   Except as otherwise provided in the Plan, the Rejection Damage Claims, if any, will be treated as General Unsecured Claims in Class 8. All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Liquidating Debtors, the Assets, the Purchaser or their respective properties or interests in property (and, for the avoidance of doubt, such rejected contracts and leases shall not constitute Assumed Liabilities or LRGP Retained Liabilities).

(b)     *Deadline: Each Person who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors or, if after the Effective Date, on the Liquidating Debtors, no later than the later of (i) thirty (30) days after the entry of an order for the rejection of such contract or lease or (ii) thirty (30) days after the Effective Date, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.*

**5.3     *Cure of Defaults in Assumed Leases and Contracts, Objections to Cure Costs.***

(a)     *Assumption Notice*: The Debtors shall serve a notice (the "<u>Assumption Notice</u>") (which may be part of or included with the Schedule of Assumed Contracts and

{00328380-23}

CONFIDENTIAL

LEGENDS0051697

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

Leases) on the applicable counterparty of the potential, assumption, or assumption and assignment, of a executory contracts and unexpired leases that are anticipated to be assumed or assumed and assigned to the Purchasers (the "Assumed Leases and Contracts") in connection with the Transaction and the Cure Cost, if any; provided however, if the Debtors identify additional executory contracts and unexpired leases that might be assumed by the Debtors or, with the consent of the Purchasers, assumed and assigned to the Purchasers, the Debtors will promptly send a supplemental Assumption Notice to the applicable counterparties to such contract or lease.

(b)     *Time for Payment of Cure Costs*: The Debtors shall cure any monetary defaults arising under each executory contract and lease to be assumed or assumed and assigned to the Purchasers pursuant to section 5.1(a) or section 5.1(b) of this Plan, in accordance with Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost on the later of: (i) the Effective Date or as soon thereafter as is reasonably practicable; (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision at the Cure Dispute Hearing, subject, in any such case, to the terms and conditions of any Purchase Agreement) or as soon thereafter as is reasonably practicable; and (iii) such other date as mutually agreed upon by the Debtors, Purchasers, and the non-Debtor party or parties to each such Assumed Lease and Contract to be assigned to the Purchasers.

(c)     *Objections to Cure Costs:  Any Party that fails to timely object to the applicable Cure Cost by the deadline to object to the confirmation of the Plan: (a) shall be forever barred, estopped and enjoined from (x) disputing the Cure Cost relating to any executory contract or unexpired lease, (y) asserting any Claim against the applicable*

50

{00328380-23}

CONFIDENTIAL

LEGENDS0051698

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

*Debtor or the Purchasers or their properties arising under Section 365(b)(1) of the Bankruptcy Code; and (b) shall be deemed to have consented to the assumption or the assumption and assignment of such executory contract and unexpired lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Liquidating Debtors, the Purchasers or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or conditions to assumption or assumption and assignment of such executory contract or unexpired lease must be satisfied (pursuant to Section 365(b)(1) of the Bankruptcy Code or otherwise). Any objection relating to the Cure Cost shall specify the Cure Cost proposed by the counterparty to the applicable contract or lease.*

(d)     *Cure Dispute Hearing:*   In the event of a timely objection (a "<u>Cure Dispute</u>") regarding: (i) any Cure Cost; (ii) the ability of the Debtors or the Purchasers to demonstrate "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under any contract or lease to be assumed or to be assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the Bankruptcy Court will consider any such objection during the Confirmation Hearing or as soon as practicable thereafter (a "<u>Cure Dispute Hearing</u>").  The Cure Costs required by Section 365(b)(1) of the Bankruptcy Code shall be paid at the time set forth <u>section 5.3(b)</u> of the Plan following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment. To the extent a Cure Dispute relates solely to a Cure Cost, the applicable Debtor may assume or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Debtors establish a reserve containing

{00328380-23}

CONFIDENTIAL

LEGENDS0051699

Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor in its judgment, and with consent of Purchaser in its sole discretion, then such contract or lease shall not be assumed or assumed and assigned under the Plan and the Debtors (or the Liquidating Debtors, if after the Effective Date) shall have the right to reject the applicable executory contract or unexpired lease effective as of the Effective Date after such determination at the Cure Hearing.

  **5.4**  ***Employment Agreements***. On the Effective Date, the Debtors shall assume and assign to the Purchasers the Contracts of the employees listed in Schedule 6.1(b) of the Purchase Agreement; however, to the extent as may be provided in the Purchase Agreement, the Purchasers shall not be obligated to assume the Contract of any employee who does not agree to waive any change of control payments or similar benefits that would otherwise accrue solely as a result of the consummation of the Transaction.

# ARTICLE 6

## DISTRIBUTIONS UNDER THE PLAN

  **6.1**  ***Distributions Under the Plan***. Except for (a) Assumed Liabilities or LRGP Retained Liabilities under the Purchase Agreement which will be paid by the Purchasers, (b) distributions to holders of Class 4 – First Lien Lenders' Secured Claims, and (c) as otherwise provided in the Plan or other order of the Bankruptcy Court, the Liquidating Debtors or, at the option of the Liquidating Debtors, any distribution agent

{00328380-23}

CONFIDENTIAL

LEGENDS0051700

the Liquidating Debtors may retain shall make all distributions to the holders of Allowed Claims that are required under this Plan. Each distribution shall be made on a Distribution Date (unless otherwise provided herein, or otherwise ordered by the Bankruptcy Court). Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter. If any litigation now pending is resolved by Final Order or settlement, and any of the Debtors are ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

### 6.2     *Record Dates*.

(a) *Record Date for Voting on the Plan*:  The claims registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the voting agent, shall be deemed closed on the date of entry of an order of the Bankruptcy Court approving the Disclosure Statement (or, with respect to any Class, any later date to which the Debtors agree) for purposes of voting on the Plan, and there shall be no further changes to reflect any new record holders of any Claims or Interests for purposes of voting on the Plan.

(b) *Record Date for Distributions Under the Plan*:  The claims registers for each of the Classes of Claims and Interests as maintained by the Debtors or any third party, including the First Lien Agent and the Second Lien Agent, shall be deemed closed on the

53

CONFIDENTIAL                                                                                      LEGENDS0051701

date of entry of the Confirmation Order.  The Debtors, the Liquidating Debtors, the First
Lien Agent and the Second Lien Agent shall be entitled to recognize for purposes of
distributions under the Plan only with those holders stated on the registers of holders
maintained by the Debtors and the Liquidating Debtors, the First Lien Agent (for
purposes of distributions to First Lien Lenders) and the Second Lien Agent (for purposes
of distributions to Second Lien Lenders) as of the date of entry of the Confirmation
Order.  Notwithstanding the foregoing, the First Lien Agent (for purposes of distributions
to First Lien Lenders) and the Second Lien Agent (for purposes of distributions to Second
Lien Lenders) may decide in their respective discretion to observe a different record date
for purposes of distributions under the Plan.

   **6.3**  *Delivery of Distributions*.  Except as otherwise provided in this Plan,
distributions to a holder of an Allowed Claim shall be made at the address of such holder
as indicated on the Debtors' records.  Notwithstanding the foregoing, distributions to the
First Lien Lenders and Second Lien Lenders shall be made to and as directed by the First
Lien Agent and the Second Lien Agent, respectively. In the event that any such
distribution is returned as undeliverable, the Liquidating Debtors shall use reasonable
efforts to determine the current address of the applicable holder, and no distribution to
such holder shall be made unless and until the Liquidating Debtors have determined such
then current address, *provided, however*, that if any distribution remains unclaimed after
the first anniversary after distribution, such distribution shall be deemed unclaimed
property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in
the Liquidating Debtors.  In such event, the Claim of the holder for such distribution shall
no longer be deemed to be Allowed, and such holder shall be deemed to have waived its

CONFIDENTIAL

rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Liquidating Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof.

      **6.4**     *Manner of Payment Under the Plan*.  At the option of the Liquidating Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

      **6.5**     *No Fractional Distributions*.  No fractional dollars shall be distributed from the Liquidating Debtors under the Plan.  For purposes of distributions from the Liquidating Debtors, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

      **6.6**     *Withholding and Reporting*.  The Liquidating Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

      **6.7**     *Surrender of Instruments*.  At the option of the Liquidating Debtors, as a condition to receiving any distribution under the Plan from the Liquidating Debtors, each holder of an Allowed Claim evidenced by a certificated instrument must either (a) surrender such instrument to the Liquidating Debtors or (b) submit evidence satisfactory to the Liquidating Debtors of the loss, theft, mutilation, or destruction of such instrument. If any holder of an Allowed Claim fails to do either (a) or (b) before the one year anniversary of the Effective Date, such holder shall be deemed to have forfeited its Claim

{00328380-23}

CONFIDENTIAL
LEGENDS0051703

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

and all rights appurtenant thereto, including the right to receive any distributions from the Liquidating Debtors hereunder.   After the first anniversary of the Effective Date, all payments from the Liquidating Debtors not distributed pursuant to this <u>section 6.7</u> shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Liquidating Debtors.

# ARTICLE 7

# MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1**   *Purchase and Sale.*

(a)   *Purchased Assets.*  In accordance with the terms and conditions of the Purchase Agreement, at the Closing, the Sellers shall sell, transfer, assign and convey, and the Purchasers shall acquire and assume, all right, title and interest of the Sellers in the Purchased Assets, pursuant to Sections 105(a), 363, 365, 1123(b)(4), 1129 and 1146(a) of the Bankruptcy Code, as follows:

(i)   Legends Gaming shall sell, transfer, assign and convey, and Global Legends shall acquire and assume, all of the rights, title and interest of Legends Gaming in the Purchased Assets;

(ii)   Legends MS shall sell, transfer, assign and convey, and Global Vicksburg shall acquire and assume, all of the rights, title and interest of Legends MS in the Purchased Assets; and

(iii)   Legends LA-1 and Legends LA-2 shall sell, transfer, assign and convey, and Global Louisiana shall acquire and assume, all of the rights, title and interests of Legends LA-1 and Legends LA-2, respectively, in the Purchased Assets.

(b)   *Excluded Assets.*   The Excluded Assets are not part of the sale and purchase contemplated by the Purchase Agreement, are excluded from the Purchased Assets and will vest in the Liquidating Debtors at the Closing.

56

{00328380-23}

CONFIDENTIAL

(c)      *Assumed Liabilities.*  Subject to the terms and conditions of the Purchase Agreement, at the Closing, the Purchasers shall assume and timely perform and discharge in accordance with their respective terms, the Assumed Liabilities.

(d)      *Excluded Liabilities.*  The Excluded Liabilities will remain the responsibility of the Sellers and shall be treated as provided in the Plan.  The Purchasers shall not assume the Excluded Liabilities.

(e)      *Sale Free and Clear of Encumbrances.* In accordance with Section 363 of the Bankruptcy Code, such sale or transfer shall be free and clear of any and all Encumbrances, other than the Permitted Encumbrances.

**7.2**    ***Riverboat Gaming.***

(a)      *LRGP Retained Assets.*  The LRGP Retained Assets shall not be transferred, assigned or conveyed to the Partners and Riverboat Gaming shall retain the LRGP Retained Assets as of the Closing.

(b)      *LRGP Excluded Assets.* Immediately prior to the Closing, LRGP shall transfer, assign and convey to the Partners, and the Partners shall accept the assignment of, all of Riverboat Gaming's right, title and interest in and to the LRGP Excluded Assets.

(c)      *LRGP Retained Liabilities.*  LRGP Retained Liabilities shall not be transferred or assigned to the Partners and Riverboat Gaming shall retain, be liable for, and shall timely perform and discharge the LRGP Retained Liabilities in accordance with their respective terms.

(d)      *LRGP Excluded Liabilities.*  Except to the extent that the LRGP Excluded Liabilities shall be discharged upon the Closing Date pursuant to this Plan, immediately

57

{00328380-23}

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

prior to the Closing, LRGP shall transfer and assign to the Partners, and the Partners shall assume, the LRGP Excluded Liabilities.

(e)     *Free and Clear of Encumbrances.*  In accordance with Section 363 of the Bankruptcy Code, such sale or transfer shall be free and clear of any and all Encumbrances, other than the Permitted Encumbrances.

**7.3.     *Necessary Actions.***

(a)     The Debtors are authorized to take any and all actions necessary to consummate the Transaction. Mr. Raymond C. Cook, the President of the Debtors, or in the event of Mr. Cook's unavailability, such other person authorized by the Bankruptcy Court, shall have full, sole and complete authority on behalf of the Debtors to take any and all actions necessary to consummate the Transaction and to execute and/or deliver on behalf of the Debtors any such agreements, documents and instruments contemplated by the Plan and the Purchase Agreement, and any schedules, exhibits or other documents attached thereto or contemplated thereby, as he deems necessary and appropriate to consummate the Transaction and any and all such actions shall be binding on the Debtors. The actions necessary to effect the Transaction may include: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the Debtors and the Purchasers may agree, and (ii) all other actions that the Debtors and the Purchasers determine to be necessary or appropriate in connection with the Transaction, including making such filings or recordings that may be required by or appropriate under applicable state law.

(b)     Entry of the Confirmation Order shall constitute conclusive corporate and

58

CONFIDENTIAL

other authority (and evidence of such corporate and other authority) from and after the Effective Date for the Person or Persons chosen by the Debtors and the First Lien Ad Hoc Group in accordance with <u>section 7.5</u> of the Plan to undertake any and all acts and actions required to implement the Transaction or otherwise contemplated by the Plan (including, without limitation, the execution and delivery of the Purchase Agreement and the actions described in <u>section 7.5</u> of the Plan) in such Person's discretion on behalf of the Liquidating Debtors, and such acts and actions shall be deemed to have authorized and duly approved  and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without the need for board or shareholder or membership vote or approval and without any requirement of further action by any members, stockholders, managers, officers, or boards of  directors or managers of the Debtors or the Liquidating Debtors.

(c)     Upon entry of a final decree in each Chapter 11 Case, unless otherwise reorganized in accordance with this Article VII or not previously dissolved, the applicable Liquidating Debtor shall be deemed automatically dissolved and wound up without any further action, formality or order of the Bankruptcy Court which might otherwise be required under applicable non-bankruptcy laws.

**7.4     *Licensing.*** In connection with the transactions contemplated herein, the Purchasers, the Debtors and, as applicable, the Liquidating Debtors, and any other party required under applicable law, shall cooperate in good faith to pursue all necessary federal, state, local and foreign governmental authorizations, consents and regulatory approvals, including to the extent required, approval of the Gaming Regulators, to lawfully consummate and implement the Plan. To the extent such fees, costs and

59

{00328380-23}

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

expenses of obtaining such regulatory approval, including filing fees and legal fees and expenses related solely to the suitability of the Purchasers, such fees, costs and expenses shall be paid by the Purchasers.

**7.5** ***Continued Corporate Existence and Authority to Implement.***

(a)     From and after the Effective Date, each of the Liquidating Debtors shall be managed and administered by a Person or Persons chosen by the Debtors and the First Lien Ad Hoc Group, and such Person or Persons shall be assisted by William J. McEnery. The Liquidating Debtors may employ one or more other Persons to assist in performing duties under the Plan. After the Effective Date, the Liquidating Debtors will commence the Wind Down of the Estates, including (i) resolving Disputed Claims, if any, and (ii) except for Assumed Liabilities or LRGP Retained Liabilities to be paid by the Purchasers, or as otherwise provided in the Plan or other order of the Bankruptcy Court, effectuating distributions to holders of Allowed Claims and Allowed Interests; (iii) otherwise implementing the Plan, the Wind Down and the closing of the Chapter 11 Cases; and (iv) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by the Liquidating Debtors. The Liquidating Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(b)     Except as otherwise provided in this Plan, the Liquidating Debtors will continue to exist after the Effective Date as separate corporate entities, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, for the purposes of (i) satisfying their obligations under the Plan, (ii) making

60

CONFIDENTIAL

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

distributions as required under the Plan, (iii) executing any documents to effectuate the Plan and the Transactions, (including any further assurances or corrective documents as may be required under the Plan, the Purchase Agreement, or the Transaction) and (iv) effectuating the Wind Down. The Liquidating Debtors, in their sole and exclusive discretion, may take such action as permitted by applicable law as the Liquidating Debtors may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Liquidating Debtor to be dissolved; or (ii) the closing of a Liquidating Debtor's case after the final Distribution.

  **7.6**  *Wind Down Expenses.* Prior to the Effective Date, the Debtors and the First Lien Ad Hoc Group shall agree to a budget (the "Wind Down Budget") for the costs of winding down the Debtors' estates and pursuing any claim or Cause of Action that is reserved to the Liquidating Debtors under this Plan including a sufficient reserve for the payment of Administrative Expense Claims and any other Claims which are payable by the Debtors under the Plan but are not paid as of the Effective Date (the "Wind Down Expenses"), and the Wind Down Expenses provided in the Wind Down Budget shall be treated as an Allowed Administrative Expense Claim. Without the consent of the First Lien Ad Hoc Group (which may be granted or withheld in the First Lien Ad Hoc Group's sole discretion), the Wind Down Expenses in the aggregate may not exceed the Wind Down Budget. After the Effective Date of the Plan, the Liquidating Debtors will employ William J. McEnery to assist in the Wind Down, including without limitation to assist in overseeing the preparation and filing of the Debtors' final tax returns and the liquidation and/or dissolution of the Debtors. The Wind Down Budget shall provide that the Liquidating Debtors shall pay Mr. McEnery a total of $200,000 after the Effective Date

61

{00328380-23}

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

of the Plan in connection with such employment, which shall be treated as an Allowed Administrative Expense Claim and paid from the Wind Down Budget. Purchasers shall not assume or be liable for the Wind Down Expenses or for any amount provided for in the Wind Down Budget.

**7.7** *Plan Documents.* The Plan and all documents to implement this Plan and the transactions contemplated herein must be in form and substance reasonably satisfactory to the Debtors, the Purchasers and the First Lien Ad Hoc Group.

**7.8** *Settlement of Michael Kelly Claims in Exchange for the Michael Kelly Claims Settlement Consideration.*

(a)     All claims and causes of action (including any Avoidance Claims) of the Debtors, their Estates and any holder of a Claim or Interest against Michael Kelly relating to payments made and obligations incurred to Michael Kelly arising out of, relating to, or in connection with the termination of Michael Kelly's employment with the Debtors including, without limitation, all payments made and obligations incurred to Michael Kelly under a certain Separation Agreement and Mutual Release of Claims (collectively, the "Michael Kelly Claims") shall be compromised and settled either (1) by an order entered before the Effective Date on a Bankruptcy Rule 9019 motion Filed by the Debtors with the Bankruptcy Court seeking approval of a compromise and settlement of the Michael Kelly Claims, or (2) by this Plan and the Confirmation Order pursuant to Section 1123(b) of the Bankruptcy Code, if the settlement and compromise of the Michael Kelly Claims has not been approved before the Effective Date.  In exchange for the full and final settlement and release of the Michael Kelly Claims on the terms herein,

62

CONFIDENTIAL                                                                                    LEGENDS0051710
13-01007 - #99-7  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 6) Pg 14 of 41

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

Michael Kelly shall pay the Michael Kelly Claims Settlement Consideration to the Debtors' Estates on or before the Effective Date.

(b)    Contingent upon the payment of the Michael Kelly Claims Settlement Consideration to the Debtors' Estates in full and in cash on or before the Effective Date, Michael Kelly shall (i) be released from any and all liability and claims on account of or related to the Michael Kelly Claims and (ii) be deemed to be a Released Party under section 9.7 or section 9.8 of this Plan with respect to the Michael Kelly Claims and with respect to all other claims and causes of action described in section 9.7 of this Plan.  If the Michael Kelly Claims Settlement Consideration is not paid to the Debtors' Estates in full and in cash on or before the Effective Date, then the Michael Kelly Claims shall be fully preserved, notwithstanding any other provision of this Plan to the contrary.

# ARTICLE 8

# RESOLUTION OF DISPUTED CLAIMS

**8.1**    *Objections to Claims; Prosecution of Disputed Claims.*  The Debtors and, after the Effective Date, the Liquidating Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims asserted in the Chapter 11 Cases (other than Allowed Claims), and such objections may be litigated to Final Order by the Debtors or Liquidating Debtors, as applicable, or compromised and settled in accordance with the business judgment of the Debtors or Liquidating Debtors, as applicable, without further order of the Bankruptcy Court; *provided however*, the Liquidating Debtors may only object to Claims that are Assumed Liabilities or LRGP Retained Liabilities if and only as directed by the Purchasers, and Purchasers shall have the authority to direct the

{00328380-23}

CONFIDENTIAL                                                                                          LEGENDS0051711

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

resolution, whether through litigation or otherwise, of all Claims that are Assumed Liabilities or LRGP Retained Liabilities. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be Filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Liquidating Debtors without notice upon *ex parte* motion.

    **8.2**    *Estimation of Disputed Claims*.  The Debtors and, after the Effective Date, the Liquidating Debtors, and, with respect to Assumed Liabilities or LRGP Retained Liabilities, the Purchasers, may at any time request that the Bankruptcy Court estimate for all purposes, including distribution under this Plan, any Disputed, contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Liquidating Debtors or, with respect to Assumed Liabilities or LRGP Retained Liabilities, the Purchasers, have previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim at any time, including, without limitation, during the pendency of an appeal relating to such objection.

    **8.3**    *No Distribution on Account of Disputed Claims.* Except as otherwise provided in this Plan and except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.  Except for Assumed Liabilities or LRGP Retained Liabilities to be paid by the Purchasers, or as otherwise provided in the Plan or other order of the Bankruptcy Court, the Liquidating Debtors shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims in a

64

CONFIDENTIAL
LEGENDS051712

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims were ultimately to be allowed in full by Final Order with respect to distributions to be made by the Liquidating Debtors under the Plan.  For the avoidance of doubt, none of the distributions to holders of the First Lien Lenders' Secured Claims shall be subject to this section 8.3.

# ARTICLE 9

## EFFECT OF CONFIRMATION OF PLAN

**9.1**     *Vesting of Assets.*

(a)     *Assets of the Debtors.* On and after the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, (i) all Assets of the Debtors sold to the Purchasers pursuant to the Purchase Agreement and this Plan shall vest in the Purchasers free and clear of all Claims, Encumbrances, except for the Permitted Encumbrances, and (ii) all Assets of the Debtors that are not sold to the Purchasers pursuant to the Purchase Agreement and this Plan shall vest in the Liquidating Debtors.

(b)     *Avoidance Claims*. Except (i) for Assets of the Debtors, including Causes of Action, sold to the Purchasers pursuant to the Purchase Agreement, (ii) for Causes of Action that are released in this Plan, the Final Cash Collateral Order or any other Final Order and (iii) as otherwise provided in this Plan, the Final Cash Collateral Order or any other Final Order, any rights, claims, or Causes of Action of the Debtors or the Debtors in Possession pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including the Avoidance Claims, any rights to, claims, or Causes of Action, all claims and Causes of Action against any third parties including, without limitation, any rights,

65

{00328380-23}

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

claims, and Causes of Action, and any other Causes of Action shall, pursuant to this Plan, be retained by and vest in the Liquidating Debtors. The Debtors and the Liquidating Debtors shall not pursue any such Avoidance Claims for affirmative recoveries, but reserve all such Avoidance Claims for defensive purposes only, and may assert Avoidance Claims as defenses against and objections to Claims filed against any of the Debtors.

**9.2** *Binding Effect.* Subject to the occurrence of the Effective Date on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or an Interest in any of the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**9.3** *Discharge of the Debtors.* Except as otherwise specifically provided in this Plan or in the Confirmation Order, and except for the obligations of the Debtors, the Debtors in Possession, and the Liquidating Debtors under the Purchase Agreement and the Transaction which shall not be affected by this section 9.3 or otherwise released or waived by the Confirmation Order, the rights afforded in this Plan and the treatment of the Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Liquidating Debtors, the Assets, and the Purchasers, properties, or Interests in, or property of the Debtors, the Debtors in Possession, and the Liquidating Debtors or the Purchasers of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided

66

CONFIDENTIAL

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors, or any conduct for which any of the Debtors may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Liquidating Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan from the Liquidating Debtors and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan.  All Entities are precluded and forever barred from asserting against the Debtors, the Debtors in Possession, the Liquidating Debtors, the Assets, or the Purchasers, properties, or Interests in or property of the Debtors, the Debtors in Possession, the Liquidating Debtors or the Purchasers of any nature whatsoever any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express

67

{00328380-23}

provisions of this Plan, and then only to the extent and in manner specifically and expressly provided in the Plan.

**9.4**     ***Indemnification Obligations***.    All rights to indemnification from the Debtors or Liquidating Debtors, as applicable, whether pursuant to applicable law, certificates of incorporation, articles of incorporation or bylaws (or similar documents), indemnification agreements, contribution agreements or other agreements affording indemnity or similar protection to any person that are in effect immediately prior to the occurrence of the Effective Date shall terminate on the Effective Date without further action, and shall extinguish, discharge, and terminate any Claims or proofs of claim filed with respect to such indemnification, but without prejudice to the rights of any persons (i) under the prior or existing directors' and officers' liability insurance policies, or (ii) for indemnity from the Debtors or Liquidating Debtors, as applicable, up to the amount of, and payable solely from, the proceeds of prior or existing directors' and officers' liability insurance policies.

**9.5**     ***Term of Certain Injunctions***.    Unless otherwise provided herein or in the Confirmation Order, all of the injunctions and/or stays provided for in, or in connection with, the Chapter 11 Cases, whether pursuant to Section 105, Section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtors may seek such further orders as they may deem necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

68

CONFIDENTIAL                                                                                          LEGENDS0051716
13-01007 - #99-7  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 6) Pg 20 of 41

**9.6** *NO SUCCESSOR LIABILITY. EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PURCHASE AGREEMENT, PLAN OR THE CONFIRMATION ORDER, NONE OF THE DEBTORS, THE LIQUIDATING DEBTORS, THE FIRST LIEN AGENT, THE FIRST LIEN AD HOC GROUP, THE FIRST LIEN LENDERS OR THE PURCHASERS WILL HAVE ANY RESPONSIBILITIES, PURSUANT TO THE PLAN OR OTHERWISE, FOR ANY LIABILITIES OR OBLIGATIONS OF THE DEBTORS OR ANY OF THE DEBTORS' PAST OR PRESENT SUBSIDIARIES RELATING TO OR ARISING OUT OF THE OPERATIONS OF OR ASSETS OF THE DEBTORS OR ANY OF THE DEBTORS' PAST OR PRESENT SUBSIDIARIES, WHETHER ARISING PRIOR TO, OR RESULTING FROM ACTIONS, EVENTS, OR CIRCUMSTANCES OCCURRING OR EXISTING AT ANY TIME PRIOR TO THE EFFECTIVE DATE. THE DEBTORS, THE LIQUIDATING DEBTORS, THE FIRST LIEN AGENT, THE FIRST LIEN AD HOC GROUP, THE FIRST LIEN LENDERS AND THE PURCHASERS SHALL HAVE NO SUCCESSOR OR TRANSFEREE LIABILITY OF ANY KIND OR CHARACTER, FOR ANY CLAIMS; PROVIDED, HOWEVER, THAT THE LIQUIDATING DEBTORS AND THE PURCHASERS SHALL HAVE THE RESPECTIVE OBLIGATIONS FOR THE PAYMENTS SPECIFICALLY AND EXPRESSLY PROVIDED, AND SOLELY IN THE MANNER STATED, IN THE PLAN AND THE PURCHASE AGREEMENT.*

**9.7** *RELEASE OF DEBTORS' ESTATES' CLAIMS. AS OF THE EFFECTIVE DATE, AND SUBJECT TO ITS OCCURRENCE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED*

{00328380-23}

CONFIDENTIAL
LEGENDS0051717

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

*PARTIES, ANY AND ALL CAUSES OF ACTION OF THE DEBTORS, DEBTORS IN POSSESSION AND THE DEBTORS' ESTATES AGAINST ANY OF THE RELEASED PARTIES BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE SHALL BE FOREVER RELEASED AND DISCHARGED.  THE FOREGOING RELEASES, HOWEVER, SHALL NOT (1) WAIVE ANY DEFENSES TO ANY CLAIMS ASSERTED AGAINST THE DEBTORS BY ANY RELEASED PARTIES EXCEPT TO THE EXTENT SUCH CLAIMS HAVE BEEN SPECIFICALLY ALLOWED IN THE PLAN OR BY A FINAL ORDER OF THE BANKRUPTCY COURT, OR (2) RELEASE ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY, OR (3) RELEASE ANY CLAIMS, CAUSES OF ACTION, OBLIGATIONS, LIABILITIES, OR RESPONSIBILITIES UNDER THE PLAN, THE PURCHASE AGREEMENT , THE NEW FIRST LIEN CREDIT AGREEMENT, THE NEW SECOND LIEN CREDIT AGREEMENT OR ANY AND ALL RELATED DOCUMENTS IN CONNECTION THEREWITH AGAINST THE PURCHASERS OR ANY OF THEIR DIVISIONS, AFFILIATES, AND THEIR FORMER, PRESENT AND FUTURE OFFICERS, DIRECTORS, SERVANTS, SHAREHOLDERS, MEMBERS, AFFILIATES, MANAGERS, PARTNERS, EMPLOYEES, AGENTS, REPRESENTATIVES, PROFESSIONALS AND CONSULTANTS. NO CAUSE OF ACTION THAT IS RELEASED UNDER THIS PLAN SHALL BE SOLD, ASSIGNED*

70

{00328380-23}

*OR TRANSFERRED TO THE PURCHASER, EITHER PURSUANT TO THIS PLAN OR THE PURCHASE AGREEMENT.*

*9.8    RELEASE BY HOLDERS OF CLAIMS.   EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO HAS VOTED TO ACCEPT THE PLAN SHALL BE DEEMED TO HAVE UNCONDITIONALLY RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ON ACCOUNT OF ANY RELATIONSHIP WITH THE DEBTORS OR ON ACCOUNT OF ANY CLAIM, EXCEPT FOR (I) WITH RESPECT TO THE LIQUIDATING DEBTORS, CLAIMS WHICH ARE OR BECOME ALLOWED CLAIMS AND ARE TO BE PAID AS PROVIDED PURSUANT TO THE PLAN, (II) CLAIMS BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE RELEASED PARTIES, AND (III) ANY CLAIMS OR CAUSES OF ACTION BASED ON GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY RELEASED PARTY, OR (3) RELEASE ANY CLAIMS, CAUSES OF ACTION, OBLIGATIONS, LIABILITIES,*

{00328380-23}

CONFIDENTIAL

LEGENDS0051719

*OR RESPONSIBILITIES UNDER THE PLAN, THE PURCHASE AGREEMENT, THE NEW FIRST LIEN CREDIT AGREEMENT, THE NEW SECOND LIEN CREDIT AGREEMENT OR ANY AND ALL RELATED DOCUMENTS IN CONNECTION THEREWITH AGAINST THE PURCHASERS OR ANY OF THEIR DIVISIONS, AFFILIATES, AND THEIR FORMER, PRESENT AND FUTURE OFFICERS, DIRECTORS, SERVANTS, SHAREHOLDERS, MEMBERS, AFFILIATES, MANAGERS, PARTNERS, EMPLOYEES, AGENTS, REPRESENTATIVES, PROFESSIONALS AND CONSULTANTS.*

*9.9    EXCULPATION.   EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED FOR IN THIS PLAN OR THE CONFIRMATION ORDER, AND TO THE MAXIMUM EXTENT AUTHORIZED BY APPLICABLE LAW, THE RELEASED PARTIES, THE DEBTORS, THE DEBTORS IN POSSESSION AND THE LIQUIDATING DEBTORS SHALL HAVE NO LIABILITY TO ANY ENTITY FOR ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THIS PLAN, THE ADMINISTRATION OF THIS PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES, EXCEPT FOR CLAIMS BASED ON GROSS NEGLIGENCE OR*

72

{00328380-23}

*WILLFUL MISCONDUCT.  IN ALL RESPECTS, EACH OF THE FOREGOING SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES WITH RESPECT TO THE NEGOTIATION OF THE PLAN, ALL MATTERS RELATING TO OR IN CONNECTION WITH THE PLAN SUPPORT AGREEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE TRANSACTIONS CONTEMPLATED AND EFFECTUATED BY THIS PLAN, THE ADMINISTRATION OF THIS PLAN, OR THE ASSETS TO BE DISTRIBUTED UNDER SUCH PLAN OR ANY OTHER ACT OR OMISSION DURING THE ADMINISTRATION OF THE CHAPTER 11 CASES OR THE DEBTORS' ESTATES.*

    **9.10**     *Preservation of All Causes of Action Not Expressly Settled, Released or Transferred.*

For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to section 9.1, unless a claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order, (i) the Liquidating Debtors expressly reserve claims or Causes of Action which vest in the Liquidating Debtors and (ii) the Purchasers expressly reserve claims or Causes of Action which vest in Purchasers under the Purchase Agreement and the Transaction, for adjudication or pursuit by the Liquidating Debtors or Purchasers, as applicable, after the Effective Date, and, therefore, no

73

{00328380-23}

preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.  The Liquidating Debtors and, as applicable, the Purchasers expressly reserve the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtors or the Debtors in Possession which vest in the Liquidating Debtors or, as applicable, the Purchasers under the Plan, the Purchase Agreement or the Transaction, as trustees for or on behalf of the creditors, not specifically and expressly waived, relinquished, released, compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Liquidating Debtors or, with respect to claims or Causes of Action which vest in Purchasers under the Purchase Agreement and the Transaction, the Purchaser shall be representatives of the Estates appointed for the purpose of pursuing any and all such claims and Causes of Action under 11 U.S.C. §1123(b)(3)(B).

Any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Liquidating Debtors or, as applicable, the Purchasers subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released,

{00328380-23}

CONFIDENTIAL

LEGENDS051722

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

compromised, settled or transferred in this Plan, the Final Cash Collateral Order or any other Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

For the avoidance of doubt, the terms of the Purchase Agreement and the Transaction shall control regarding Assets transferred to the Purchasers.

**9.11** *Insurance Neutrality*. Except as may otherwise be provided by applicable bankruptcy or non-bankruptcy laws, nothing contained in this Plan shall in any way operate to, or have the effect of, impairing, supplementing, expanding, decreasing, or modifying: (A) the rights of any of the Debtors' insurers, including but not limited to Zurich American Insurance Company ("ZAIC") or any other affiliate of ZAIC (collectively, "Zurich" and together with all other entities that are providing or have provided insurance to the Debtors or any affiliate or predecessor of the Debtors, the "Insurers"); (B) the rights of claimants against any Insurers for recovery of Claims solely from such Insurers, (C) the rights of Cannon Cochran Management Services, Inc. (CCMSI), which has served as a Third-Party Administrator with regard to certain policies of insurance issued by Zurich to the Debtors; or (D) any rights or obligations arising under any insurance policy issued to the Debtors or under which the Debtors may seek coverage (the "Policies") or Claimants may seek recovery. For all issues of insurance coverage or otherwise, except as may otherwise be provided by applicable bankruptcy or

75

CONFIDENTIAL

LEGENDS0051723

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

non-bankruptcy laws, the provisions, terms, conditions, and limitations of the Policies shall control.

# ARTICLE 10

## THE EFFECTIVE DATE OF THE PLAN

**10.1**   *Conditions to Occurrence of Effective Date of Plan.*  The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date.   The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtors, the First Lien Ad Hoc Group and the Purchasers acting jointly (any of which party may withhold its consent to any waiver in its sole discretion) and any other party whose consent to any such waiver is specifically required in writing under the Plan, if such waiver is legally permissible with respect thereto:

10.1.1  The Confirmation Order and the Plan as confirmed pursuant to the Confirmation Order and Filed shall be in a form and substance reasonably satisfactory to the Debtors, the First Lien Ad Hoc Group and the Purchasers.

10.1.2 The Confirmation Order shall be a Final Order.

10.1.3 The Bankruptcy Court shall have made the statutorily-required findings of fact and conclusions of law in connection with the confirmation of this Plan, each of which findings and conclusions shall be expressly set forth in the Confirmation Order or in findings of fact and conclusions of law entered in support of and contemporaneously with the entry of the Confirmation Order.

76

CONFIDENTIAL                                                                    LEGENDS0051724
13-01007 - #99-7  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 6) Pg 28 of 41

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

10.1.4  All actions, Plan documents, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan and the Transaction shall have been executed and delivered in form and substance reasonably satisfactory to the Debtors, the First Lien Ad Hoc Group and the Purchasers.

10.1.5  Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals, including to the extent required, approval of the Gaming Regulators and Governmental Authorities, required for the consummation of each of the transactions contemplated in the Plan and the Transaction shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.1.6  All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or final orders of the Bankruptcy Court shall have been paid into and shall be held in escrow, free and clear of Liens, Claims and Encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.1.7  All fees and expenses due to or incurred by professionals for the First Lien Agent and the First Lien Ad Hoc Group through the Effective Date that have not been previously paid shall have been paid in cash directly to each such professional.

10.1.8   The Transaction Fees due to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC shall have been paid in full in cash directly to Houlihan Lokey Capital, Inc. and Seaport Group Securities, LLC, as applicable.

10.1.9   All payments required by this Plan to be made on the Effective Date shall have been made.

{00328380-23}

CONFIDENTIAL                                                                                          LEGENDS0051725

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

10.1.10   The Closing as contemplated in the Purchase Agreement shall have occurred or shall occur on the Effective Date.

10.1.11 The New First Lien Credit Agreement and the New Second Lien Credit Agreement shall have been executed by the borrower and the guarantors under the New First Lien Credit Agreement and the New Second Lien Credit Agreement, the First Lien Agent and the holders of at least 50.01% of the amount of the First Lien Lenders' Secured Claims outstanding as of the Petition Date.

10.1.12 The Debtors and the First Lien Ad Hoc Group shall have agreed on the Wind Down Budget, and sufficient funds for the payment of the Wind Down Expenses shall have been  transferred to the Liquidating Debtors.

10.1.13 To the extent required under applicable law, any orders respecting Mr. McEnery's individual bankruptcy case necessary to effectuate the terms of this Plan shall have been entered.

**10.2**   *Filing of Notice of Effective Date.*   Within two (2) Business Days after the occurrence of the Effective Date, the Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors in Possession reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

**10.3**   *Withdrawal of Plan Prior to the Confirmation Date.*   Subject to the terms of the Plan Support Agreement, the Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter

{00328380-23}

CONFIDENTIAL

LEGENDS0051726

13-01007 - #99-7  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 6) Pg 30 of 41

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

11 Cases.  If the Plan is withdrawn prior to the Confirmation Date in accordance with this section, then the Plan shall be deemed withdrawn without the need for any action by any party in interest or the Bankruptcy Court.  In such event, the Plan shall be of no further force or effect, and (i) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and Claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any Claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

# ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1**   ***Payment of Statutory Fees.***   All fees and expenses payable pursuant to Section 1930 of title 28 of the United States Code shall be paid after the Effective Date by the Liquidating Debtors, as, when and in the amount as required by applicable law, until the Bankruptcy Court enters a Final Decree.

**11.2**   ***Pension Plans.***   For avoidance of doubt, on and after the Effective Date, pursuant to Section 1129(a)(13) of the Bankruptcy Code, the Purchasers  shall continue to pay all retiree benefits of the Debtors (within meaning of Section 1114 of the Bankruptcy Code), if any, at the level established in accordance with Section 1114 of the Bankruptcy

79

CONFIDENTIAL

LEGENDS051727

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

Code, at any time prior to the Confirmation Date, for the duration of the period for which

such Debtors had obligated themselves to provide such benefits.  Nothing herein shall: (i)

restrict the Purchasers' right to modify the terms and conditions of the retiree benefits, if

any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy

law, or Section 1144(m) of the Bankruptcy Code; or (ii) be construed as an admission

that any such retiree benefits are owed by the Debtors or Purchasers.

**11.3**   *Notice.*   Any notices, requests, and demands required or permitted to be

provided under this Plan, in order to be effective, must be in writing (including by

electronic mail or facsimile transmission), and unless otherwise expressly provided

herein, shall be deemed to have been duly given or made (a) if personally delivered or if

delivered by electronic mail or courier service, when actually received by the Entity to

whom such notice is sent, or (b) if deposited with the United States Postal Service

(whether actually received or not), at the close of business on the third Business Day

following the day when placed in the mail, postage prepaid, certified or registered with

return receipt requested, addressed to the appropriate Entity or Entities, at the address of

such Entity or Entities set forth below (or at such other address as such Entity may

designate by written notice to all other Entities listed below in accordance with this

section:

{00328380-23}

CONFIDENTIAL                                                                                 LEGENDS0051728

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

| | |
|---|---|
| **If to the Debtors or Liquidating Debtors:** | Heller, Draper, Hayden, Patrick & Horn, L.L.C.<br>650 Poydras Street, Suite 2500<br>New Orleans, LA 70130<br>Tel: 504-299-3300<br>Fax: 504-299-3399<br>Attn:  William H. Patrick, Esq.<br>Email: wpatrick@hellerdraper.com<br>Attn:  Tristan Manthey, Esq.<br>Email: tmanthey@hellerdraper.com<br><br>AND<br><br>Jenner & Block<br>919 Third Ave.<br>37th Floor<br>New York, NY 10022<br>Tel: (212) 891-1600<br>Fax: (212) 891-1699<br>Attn: Brian Hart<br>Email: bhart@jenner.com<br>Attn: Marc B. Hankin<br>Email: mhankin@jenner.com |
| **If to the First Lien Agent and the First Lien Ad Hoc Group:** | Latham & Watkins LLP<br>885 Third Avenue<br>New York, NY 10022<br>Tel: 212-906-1200<br>Fax: 212-751-4864<br>Attn: Michael J. Riela<br>Email: michael.riela@lw.com |
| **If to the Purchasers:** | Gordon, Arata, McCollam, Duplantis & Eagan, L.L.C.<br>One American Place<br>301 Main Street, Suite 1600<br>Baton Rouge, LA 70801-1916<br>Tel: (225) 381-9643<br>Fax: (225) 336-9763<br>Attn: Louis M. Phillips<br>Email: lphillips@gordonarata.com<br>Attn: Elizabeth A. Spurgeon<br>Email: espurgeon@gordonarata.com |

      **11.4**  *Headings*.  The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

      **11.5**  *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of

81

{00328380-23}

Louisiana, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.  For the avoidance of doubt, the governing law provisions of the Purchase Agreement, the New First Lien Credit Agreement and the New Second Lien Credit Agreement shall control with respect to those agreements.

  **11.6** *Compliance with Tax Requirements*.  In connection with this Plan, the Debtors and the Liquidating Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

  **11.7** *Exemption from Transfer Taxes*.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan or the Transaction, and the consummation of the Transaction shall be exempt from all taxes as provided in such Section 1146(a) of the Bankruptcy Code.

  **11.8** *Exemption from Securities Law.* Distributions pursuant to the Plan and the offer, issuance, sale or purchase of the Riverboat Gaming Interests under this Plan shall be exempt from registration under any federal (including the Securities Act), state or local law, rule or regulation pursuant to Section 1145 of the Bankruptcy Code or other applicable law. Purchasers shall be deemed to qualify as a successor to the Debtors under the Plan for purposes of Section 1145 of the Bankruptcy Code and Distributions

82

CONFIDENTIAL

LEGENDS0051730

HDPH DRAFT 10/25/2012
**FOR DISCUSSION PURPOSES ONLY**

and the offer, issuance, sale or purchase of the Riverboat Gaming Interests under this Plan shall be deemed to satisfy the other requirements of Section 1145(a)(l) of the Bankruptcy Code and therefore be exempt from registration under the Securities Act and any federal, state or local securities law, rule or regulation.

The entry of the Confirmation Order shall constitute findings of fact and conclusions of law that any Released Party who solicits or participates in the offer, issuance, sale or purchase of the Riverboat Gaming Interests under this Plan under this Plan, is in good faith and has complied with the applicable provisions of the Bankruptcy Code, and is not liable, on account of such solicitation or participation, for any violation of an applicable law, rule or regulation governing solicitation of acceptance or rejection of this Plan or the offer, issuance, sale or purchase of any securities, including but not limited to the Riverboat Gaming Interests, under this Plan.

**11.9** *Further Authorizations*.  The Purchasers, the First Lien Agent, the First Lien Ad Hoc Group, the Debtors, and the Liquidating Debtors (after the Effective Date), may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

**11.10** *Successors and Assigns*.  The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

**11.11** *Modification and Amendment of the Plan.*  Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rules

{00328380-23}

CONFIDENTIAL

LEGENDS0051731

2002 and 3019, the Plan may be amended or modified by the Debtors at any time, and, after the Effective Date, by the Liquidating Debtors, *provided* that, notwithstanding the foregoing, no amendments or modifications which affect the rights or obligations of the First Lien Ad Hoc Group, the First Lien Agent or Purchasers may be made to the Plan after confirmation without the approval of the First Lien Ad Hoc Group, First Lien Agent, and the Purchasers, which approval may be granted or withheld in their respective sole discretion.

**11.12** *Nonvoting Stock.* To the extent required by Section 1123(a)(6) of the Bankruptcy Code, the certificates of incorporation or articles of organization of any corporate Liquidating Debtors shall be deemed to prohibit the issuance of nonvoting equity securities by each such Liquidating Debtor, subject to further amendment of such certificates of incorporation or articles of organization as permitted by applicable law.

# ARTICLE 12

# <u>RETENTION OF JURISDICTION</u>

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases or this Plan, including, without limitation, the following:

**12.1** *Executory Contracts and Unexpired Leases.* To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are parties or with respect to which the Debtors or Purchasers may be liable, (ii) to review and

{00328380-23}

CONFIDENTIAL                                                                    LEGENDS0051732

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

determine all Cure Costs under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Rejection Damage Claims.

**12.2** *Causes of Action.* To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Liquidating Debtors or, as applicable, the Purchasers, after the Effective Date.

**12.3** *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.* To hear and determine any objections to the allowance of Claims (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, including any Claim which may constitute or constitutes an Assumed Liability or LRGP Retained Liability, and to determine any and all disputes among creditors with respect to their Claims.

**12.4** *Enforcement/Modification of Plan.*

12.4.1 To hear and determine any requests to modify this Plan (which requests may only be made with the prior written consent of the Consenting First Lien Lenders and the Purchasers), remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan, the Purchase Agreement or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

85

CONFIDENTIAL

LEGENDS0051733

13-01007 - #99-7  File 10/23/13  Enter 10/23/13 15:34:37  Exhibit -F- (part 6) Pg 37 of 41

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

12.4.3  To hear and determine such other matters that may be set forth in the Plan, the Purchase Agreement, the Confirmation Order or that relate to any transactions required or contemplated by the Plan.

12.4.4  To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Purchase Agreement, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Cases.

12.4.5  To hear and determine any controversy, suit or dispute relating to payments or distributions under the Plan.

12.4.6  To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7  To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.4.8  To hear and determine any disputes relating to the Plan Support Agreement.

**12.5**  *Compensation of Professionals for the Debtors.*  To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals for the Debtors and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

**12.6**  *Settlements.*  To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtors or the Liquidating Debtors.

86

{00328380-23}

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

**12.7 *Taxes*.**   To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code.

**12.8 *506(b) Claims*.**   To determine the amounts, if any, of the reasonable fees, costs and other charges payable under Section 506(b) of the Bankruptcy Code.

**12.9 *Specific Purposes*.**   To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

**12.10   *Final Decrees*.**   To enter an order or final decree closing the Chapter 11 Cases.

[Remainder of Page Intentionally Left Blank.]

{00328380-23}

CONFIDENTIAL

HDPH DRAFT 10/25/2012
FOR DISCUSSION PURPOSES ONLY

Dated: _____, 2012

**PLAN FILED BY:**

          Louisiana Riverboat Gaming Partnership
          Legends Gaming of Louisiana-1, LLC
          Legends Gaming of Louisiana-2, LLC
          Legends Gaming, LLC
          Legends Gaming of Mississippi, LLC
          Legends Gaming of Mississippi RV Park, LLC

BY: _____
          RAYMOND C. COOK
          THEIR CHIEF EXECUTIVE OFFICER

_____
William H. Patrick, III, La. Bar No. 10359
Tristan Manthey, La. Bar No. 24539
**HELLER, DRAPER, HAYDEN,**
**PATRICK & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6103
Telephone: 504-299-3300
Fax: 504-299-3399
Email: wpatrick@hellerdraper.com
       tmanthey@hellerdraper.com

As counsel to the Debtors and Debtors in
Possession

_____
Marc B. Hankin
**JENNER & BLOCK LLP**
919 Third Ave.
37th Floor
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699

As special counsel to the Debtors and Debtors in
Possession

88

{00328380-23}

**HDPH DRAFT 10/25/2012**
**FOR DISCUSSION PURPOSES ONLY**

## NOTICE ANNEX

Pursuant to 11 U.S.C. § 342, the following sets forth the name, addresses and last four digits of the tax identification number for each of the referenced debtors and debtors in possession:

| DEBTORS AND ADDRESSES | CASE NO. | TAX I.D. NO. |
|---|---|---|
| Louisiana Riverboat Gaming Partnership<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12013 | xx-xxx5811 |
| Legends Gaming of Louisiana-1, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12014 | xx-xxx3064 |
| Legends Gaming of Louisiana-2, LLC<br>711 DiamondJacks Blvd.<br>Bossier City, LA 71111 | 12-12015 | xx-xxx3099 |
| Legends Gaming, LLC<br>7670 Lake Mead Blvd., Ste. 145<br>Las Vegas, NV 89128-6651 | 12-12017 | xx-xxx7524 |
| Legends Gaming of Mississippi, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12019 | xx-xxx3167 |
| Legends Gaming of Mississippi RV Park, LLC<br>3990 Washington Street<br>Vicksburg, MS 39180 | 12-12020 | xx-xxx8765 |

{00328380-23}

CONFIDENTIAL

LEGENDS0051737