**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**Global Gaming Solutions, LLC, et al**

                                         **Civil Action 13-3123**
                                         **SMH-MLH**

**Versus**

**Legends Gaming of Louisiana 1, LLC, et al**

**CORRECTIVE DOCUMENT**
**Legends' Opposition and Response [R. Doc. 73] to Global's**
**Motion to Reconsider Order (ECF Doc. No. 106) Denying Global and Joseph P. Brantley,**
**IV's Joint Motion For Protective Order Filed by Global Gaming Parties,**
<u>**The Brantley Firm and Joseph P. Brantley, IV**</u>

<u>**TABLE OF CONTENTS**</u>

Table of Authorities ............................................................................................. iii

A.  Introduction ............................................................................................... 1

B.  Issues Before the Court ............................................................................. 6

C.  Undisputed Facts ....................................................................................... 7

D.  Law and Argument..................................................................................... 9

    1.  No Grounds for Reconsideration Exist ................................................ 9

    2.  There is no attorney-client privilege because Mr. Brantley Jointly
       Represented the parties ...................................................................... 10

    3.  Legends is not waiving Global's attorney-client privilege; There is no privilege............ 13

    4.  Waiver of Privilege ............................................................................ 14

E.  Relief Requested........................................................................................ 16

SIGNATURE BLOCK .................................................................................... 17

Exhibits:

1 -   *Motion to Reconsider Order (ECF Doc. No. 106) Denying Global and Joseph P. Brantley, IV's Joint Motion For Protective Order by Global Gaming Parties, the Brantley Firm and Joseph P. Brantley, IV* with supporting memorandum

2 -   Affidavit of Joseph P. Brantley, IV dated September 18, 2013 (the "Second Affidavit").

3 -   Asset Purchase Agreement entered into between Legends and Global dated July 25, 2012

4 -   Bankruptcy Court order authorizing Legends' employment of Joseph P. Brantley.

5 -   Letter agreements between Joseph P. Brantley, IV and Global

6 -   Affidavit of Joseph P. Brantley, IV, (the "First Affidavit")

7 -   Amended Asset Purchase Agreement dated November 29, 2012

8 -   Joint Motion for Protective Order filed by Brantley and Global

9 -   Legends' Waiver of Conflict of Interest

10 -   Global's Waiver of Conflict of Interest

11 -   Legends' Subpoena to Brantley

12 -   Global's Subpoena to Brantley

13 -   String of Emails

14 -   Global's *Objection to Defendant's Motion for a Protective Order Precluding Discovery Concerning Feasibility*

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

## <u>CASE LAW</u>

*Ashcroft and Gerel v. Shaw*, 126 MD App. 325, 354,
   728 A.2d 798 (1999). ...................................................................................12

*Asset Funding Group, LLC v. Adams & Reese, LLP*, NO: 07-2965,
   2008 U.S. Dist. LEXIS 68695, at *13 (E.D. La. Sept. 9, 2008) ...........................14

*Brennan's, Inc. v. Brennan's Restaurant, Inc.*,
   590 F.2d 168, 172 (5th Cir. 1979) ...............................................................5,11

*Bohn v. Bohn*, 503 So.2d 467 (LA 1987), citing *Hodges v. Southern Farm Bureau*,
   433 So.2d 125 (LA 1983). ..........................................................................5,11

*Bridges v. Hertz Equip. Rental Corp.*, 2008-0400 (LA 6/20/08),
   983 So.2d 1256, 1258 .................................................................................4,10

*Browning v. Navero*, 894 F.2d 99, 100 (5th Cir. 1990). .......................................9

*Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547 (S.D. NY 2013).....................14

*Conkling v. Turner*, 883 F.2d 431, (5th Cir. 1989) ...............................................14

*Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998) .......................14,15

*Excess Ins. Co., Ltd. v. Saunee*, Civil Action 95-0325 (1996),
    1996 WL 409224 (E.D. LA 7/19/1996)......................................................4,14

*Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970), cert denied
   401 US 974, 91 S.Ct. 1191, 28 L.Ed 323 (1971)...........................................4,11

*Helena Labs Corp. v Alpha Scientific Corp.*, 483 F.2d 538, 539.................................9

*Hodges v. Southern Farm Bureau*, 433 So.2d 125 (LA 1983). ............................5,11

*Neighborhood Development Collaborative v. Murphy*,
   233 F.R.D. 436 (D. Md 2005).................................................................11,12

*Papas v. Prince*, 2014 WL 3778684 (E.D. LA 7/20/2014) ...................................9,10

*Sky Valley Ltd. P'ship  v. ATX Sky Valley Ltd.*, 150 F.R.D. 648 (N.D Cal. 1993) ........................12

<u>**CASE LAW**</u>  (continued)

*Succession of Smith v. Kavanaugh Pierson and Talley*, 513 So.2d 1138, (LA  1987)..............14,15

*Templent v. Hydrochem, Inc.*, 367 F.3d 473, 478 – 79, (5th Cir. 2004) .........................................9

*Waltman v. International Paper Co.*, 875 F.2d 468, 473, (5th Cir. 1989)......................................9

<u>**STATUTES**</u>

Louisiana Code of Evidence Article 506(C)(5).......................................................3,4,10,13,14

This 16th  day of September, 2014.

Respectfully submitted,

/s/ Barry W. Miller

William H. Patrick, III, La. Bar No. 10359
Barry W. Miller, La. Bar No.  09678
Drew R. Ballina, Bar No.01704
**Heller, Draper, Patrick, Horn & Dabney, L.L.C.**
9311 Bluebonnet Blvd.
Baton Rouge, LA  70810
Phone (225) 767-1499
Email:  wpatrick@hellerdraper.com
           bmiller@hellerdraper.com
**Counsel for Debtors / Legends**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

Global Gaming Solutions, LLC, et al

                                 Civil Action 13-3123
                                   SMH-MLH

Versus

Legends Gaming of Louisiana 1, LLC, et al

**Legends' Opposition and Response to Global's
Motion to Reconsider Order (ECF Doc. No. 106) Denying Global and Joseph P. Brantley,
IV's Joint Motion For Protective Order Filed by Global Gaming Parties,
The Brantley Firm and Joseph P. Brantley, IV**

**NOW INTO COURT**, through undersigned counsel, come  Legends,[1] who respectfully

submits this opposition to the *Motion to Reconsider Order (ECF Doc. No. 106) Denying Global*

*and Joseph P. Brantley, IV's Joint Motion For Protective Order by Global Gaming Parties, the*

*Brantley Firm and Joseph P. Brantley, IV* (hereinafter the "Motion") filed herein by Global.[2]

A.      **INTRODUCTION**

   Global has failed to allege any grounds to support its motion for reconsideration.  Global

merely maintains that it disagrees with the previous ruling and requests that the Court reconsider

the Bankruptcy Court's decision.  However, none of the criteria  for reconsideration, which are

enunciated in Global's memorandum, pages 2-3, are met in this case.

      Global has indicated that it will be seeking wholesale review and reconsideration of all of

the Bankruptcy Court's adverse rulings, simply because it disagrees with them.  This will place a

---

[1] Louisiana Riverboat Gaming Partnership (12-12013); Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020), (hereinafter collectively referred to as "Legends" or the "Debtors"), the Debtors in the jointly administered chapter 11 proceedings before the United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division, (the "Bankruptcy Court"), Case No. 12-12013, and the defendants, plaintiffs-in-reconvention, plaintiffs,  and defendants-in-reconvention herein.

[2] Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, and  Global Gaming Solutions, LLC  are hereinafter collectively referred to as "Global."

tremendous and unnecessary burden upon this Court to reconsider virtually all of the orders previously entered by the Bankruptcy Court, and this case will start from scratch after the parties have spent months in expensive litigation.   This Court should give great deference to the Bankruptcy Court's decisions and not entertain wholesale reconsideration of the previous rulings.

In the Motion and supporting memorandum, [Bank. Dkt. P-115 and P-116, attached hereto as Exhibit 1],[3] Global has misstated the facts and obfuscated the law to muddle the issues and improperly assert the attorney-client privilege against Legends.   The communications in question are between Joseph P. Brantley, IV and his law firm, Brantley & Associates, APLC (collectively referred to as "Brantley") on the one side and his joint clients, Legends and Global, on the other. The Bankruptcy Court correctly found that Brantley represented both Global and Legends at the same time concerning their joint effort to have the Louisiana Gaming Control Board (the "Board")[4] approve the Purchase Agreement entered into between Legends and Global dated July 25, 2012, as amended,  (the "APA"), [R. Doc. 57-8] attached hereto as Exhibit 3]. (The Bankruptcy Court approved Brantley's appointment as counsel for the Debtors on September 19, 2012 [Bank. Dkt. P-85-3 and 85-4] to represent Legends concerning regulatory matters before the Board, which included approval of the APA.   Brantley was employed by Global on April 19, 2012, for the sole purpose of pursuing approval of the APA by the Board).

The APA is a binding contract between Legends and Global for the transfer and sale of Legends' assets to Global. The contemplated sale included Legends' Louisiana gaming license and related permits.   The approval of the APA by the Board was in the **common interest** of both

---

[3]  As of the filing of this opposition, the bankruptcy court records of the underlying  Adversary Case No. 13-1007 consolidated with Adversary Case No. 13-1008 have not been transferred to this Court; therefore, Legends is attaching hereto as a separate appendix of exhibits the relevant documents and pleadings originally filed with the Bankruptcy Court.
[4]  See *Brantley Affidavit*, dated September 18, 2013, [Bank. Dkt. P-85-2], attached hereto as Exhibit 2.

of Brantley's clients — Global and Legends -- and was a requirement under the APA.  Indeed, Section 5.3 of the APA, as found on page 42, sets forth the "Joint Obligations" of Global and Legends in order to achieve the common goal of obtaining Board approval of the APA.[5]

Under these circumstances, the law is clear.  Any communications between Global, its representatives, attorneys and agents, and Brantley are not "privileged communications" against Legends because of Brantley's undisputed dual representation of Global and Legends in pursuing their common interest objectives.

The jurisprudence of the United States Fifth Circuit Court of Appeals, the provisions of Article 506(C)(5) of the Louisiana Code of Evidence, and the cases interpreting this article clearly provide that Global is barred from asserting the attorney-client privilege against Legends regarding its communications with Brantley concerning their pursuit of their common interests.

Article 506(C)(5) provides, in pertinent part, that:

There is **no privilege** under this article as to a communication:

\*\*\*

(5) which is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or their representative to a lawyer or his representative retained or consulted in common when subsequently offered for one client against the other in a civil action.

Nothing could be clearer — Article 506(C)(5) addresses the exact situation existing here. Brantley, who has been the "gaming regulatory attorney" for Legends since 2006,[6] was employed by Global to represent both parties in their common interest of having the APA approved by the Board — a condition of the APA. *See*, APA, Art. 7.1(g), p. 48.

---

[5] The APA is attached hereto as Exhibit 3.
[6] *See* Affidavit of Joseph P. Brantley, IV executed on September 18, 2013, attached hereto as Exhibit 2   The Bankruptcy Court entered an order on September 19, 2012 [Bank. Dkt. P-85-3] approving the employment and compensation of certain professionals of Legends. Pursuant to the exhibit listing these professionals [Bank. Dkt. P-85-4], Brantley is listed as the "Attorney handling Louisiana gaming regulatory issues" for Legends. *See* Exhibit 4 attached hereto.

Global's argument that there was no dual representation or common interest representation between the two Brantley clients is disingenuous. Global fully admits, as it must, that Global retained Brantley for the sole purpose of obtaining the approval of the APA from the Louisiana regulatory authorities. This relationship is outlined by the two letter agreements between Brantley and Global's general counsel that define the scope and purpose of Brantley's representation of Global.[7]

Brantley has executed two affidavits, one prepared by Global (the "First Affidavit")[8] [Bank. Dkt. 82-1] and one on behalf of Legends (the "Second Affidavit") [Bank. Dkt. 85-2]. The First Affidavit, prepared by Global, merely contains questionable conclusionary statements that are belied by Brantley's own factual statements made in his Second Affidavit. The facts show there definitely was a joint representation and that the "common interest exception" is applicable. Legends maintains that neither Global nor Legends may prevent disclosure to the other of their communications with Brantley as related to the subject matter of the Dual Representation — specifically, Board approval of the APA. *See* Art. 506(C)(5) of  the Louisiana Code of Evidence; *Excess Ins. Co., Ltd. v. Saunee*, Civil Action 95-0325 (1996), 1996 WL 409224 (E.D. LA 7/19/1996); *Bridges v. Hertz Equip. Rental Corp.*, 2008-0400 (LA 6/20/08), 983 So.2d 1256, 1258 ("It is well settled under Louisiana law that the discovery statutes are to be liberally and broadly construed to achieve their intended objectives.").

The Fifth Circuit has held that in "situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other. This is true even where the attorney acts jointly for two or more persons **having no formalized business arrangement** between them." *Garner v. Wolfinbarger*,

---

[7] See letter agreements [Bank. Dkt. 82-1] attached hereto as Exhibit 5.
[8] A copy of the First Affidavit is attached hereto as Exhibit 6.

430 F.2d 1093, 1103 (5th Cir. 1970), cert denied 401 US 974, 91 S.Ct. 1191, 28 L.Ed 323 (1971) (emphasis added); *see also*, *Brennan's, Inc. v. Brennan's Restaurant, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("Neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation.").  Global erroneously relies on the fact that Brantley was employed by Global and Legends under two contracts.  That is a meaningless distinction.  As the Fifth Circuit held in *Wolfinbarger,*  it is not necessary to have a formal written declaration of joint representation —courts will examine the substance rather than formalities to make a determination as to the existence and scope of the joint representation. *Wolfinbarger*, 430 F.2d at 1093.

The Louisiana Supreme Court has further held that communications and information received by an attorney while jointly representing two parties are not subject to the attorney-client privilege by either party against the other.  *See*, *Bohn v. Bohn*, 503 So.2d 467 (LA 1987), citing *Hodges v. Southern Farm Bureau*, 433 So.2d 125 (LA 1983).

All communications between Brantley and Global related to the objective of obtaining APA approval by the Board must be disclosed and produced to Legends.  Simply put, there is no attorney-client privilege between Global and Brantley as to Legends concerning the common interest matters; therefore, Brantley's communications with Global must be disclosed and produced to Legends.[9]

Global's interpretation of the relevant Louisiana statute and the "common interest exception" is absurd.  Global argues that the statute is limited to situations in which one of the parties (Global) wishes to introduce information, documents or evidence which would be subject

---

[9] To the extent that Brantley represented either Global or Legends on subjects *other than* "matters comprehended by [the] joint representation"—*i.e.*, Gaming Board approval of the APA—communications with Brantley on such subjects would fall outside the exception to attorney-client privilege for the parties to a dual representation. *Brennan's*, 590 F.2d at 172.  In other words, attorney-client privilege *would* apply to communications between one of the parties (but not the other) and Brantley related to matters *other than* Board approval of the APA.

to the attorney-client privilege against the other party (Legends). Global maintains that its purported privileged communications with Mr. Brantley can only be waived if it decides to use privileged information against Legends. While this is of course the general rule, it completely ignores the "common interest exception."

Here, there exists an undisputable situation of "dual representation" by one attorney whereby two parties employed the same attorney to achieve a common interest. In such situations, there is no attorney-client privilege as between the two parties concerning the common interest- Global is barred from asserting the attorney-client privilege against Legends.

Alternatively, Global waived any such privilege when it raised affirmative defenses that put Brantley's advice squarely at issue. Global claims that the Board would not have approved the grant of a gaming license to Global as required by the APA. This assertion squarely puts at issue the very advice that Mr. Brantley jointly rendered to the parties.

## B.    ISSUES BEFORE THE COURT

1.    Legends maintains that there are no grounds to reconsider the previous ruling.

2.    The parties disagree as to the existence of the attorney-client privilege in the instant factual situation.

      a. Global maintains that there is in fact an attorney-client privilege concerning the communications between Global representatives and Brantley and, therefore, such communications may not be produced or disclosed by Brantley to Legends.

      b. Legends maintains that Brantley represented both Global and Legends in a "dual representation" capacity for their "common interest" - to have the APA and the transfer of the Debtors' assets, gaming licenses and permits to Global approved by the Board. Therefore, as between Global and Legends, the parties to the Dual Representation, there is no attorney-client

privilege with respect to communications with Brantley related to the subject matter of that joint engagement — the Board's approval of the APA.

3.     Alternatively, Legends asserts that to the extent there may have been a privilege, Global has waived the privilege by putting Brantley's communications at issue.

## C.    UNDISPUTED FACTS

1.     Commencing in 2006, through the present, Joseph P. Brantley, IV has been employed by Legends to provide legal services and advice to Legends in the area of Louisiana Gaming Regulatory Law. *See* attached Exhibit 2, Brantley's Second Affidavit.

2.     On July 25, 2012, Legends and Global entered into the APA whereby Legends agreed to sell and Global agreed to purchase virtually all of the Debtors' assets subject to the terms of the APA [Exhibit 3]. The APA was amended on November 29, 2012. [R. Dkt. 57-10, Exhibit 7].

3.     The APA required, *inter alia*., that  the Debtors' Louisiana gaming license and associated permits be transferred to Global. *See*, APA, Art. II, pp. 21 -22.

4.     In order to consummate the APA and the transfers of the assets, license and permits, the approval and authorization from the Board was required. *See*, APA, Art. VII, 7.1(g), p. 48.

5.     On or about April 19, 2012, Brantley was also employed by Global to provide legal services and advice in order to obtain the required regulatory approval and licensing from the Board. *See* p. 2, ¶ 1 of the Joint Motion for Protective Order, [Bank. Dkt. P-82, attached hereto as Exhibit 8], and attached employment letters/agreements between Global and Brantley dated April 19, 2012. According to Global, the employment agreement is set forth in two letters

between Brantley and Global's general counsel, N. Martin Stringer ("Stringer") of the firm of McAfee & Taft, located in Oklahoma City, Oklahoma.  (*See* attached Exhibit 5 and Exhibit 6.)

6.     The employment agreement/letter specifically states under the heading, "*Our Expected Scope of Representation*," that Brantley's employment by Global pertained to "Louisiana gaming regulatory matters and governmental relations." The second letter provides, "[s]pecifically, we have been asked to represent Global in connection with the acquisition of the assets and/or membership interests of Legends Gaming ('Legends'). We understand that the business terms of the transaction are being negotiated by your firm [Stringer's], as counsel to Global our role will be to serve as local counsel on **Louisiana law and regulatory issues."** (emphasis added).

7.     Brantley was employed by both parties in order to obtain the approval and authorization for the APA and the transfer of the assets, licenses and permits from the Debtors to Global.  This was clearly a dual representation seeking a common objective on behalf of both Global and Legends — who were both represented by Brantley at this time.

8.      Global and Legends simultaneously executed "Waivers of Conflicts of Interest" in favor of Brantley.  Copies of the waivers between Brantley and Legends on the one hand and Brantley and Global on the other are attached hereto as Exhibits 9 and 10.

9.     Subsequently, litigation was instituted by Global and Legends after Global repudiated and breached the APA.  Prior to the commencement of this litigation, Brantley and Global terminated their professional relationship. Global had ceased its efforts to pursue the approval of the Board for the APA prior to this litigation.  The exact date that Global breached the agreement by refraining from seeking Board approval is a factual issue in this case.

10. Legends issued a subpoena for production of documents to Brantley on August 22, 2013 (the "Legends' Subpoena"), [R. Dkr. 85-7] a copy of which is attached hereto as Exhibit 11.

11. On September 3, 2013, Global issued a subpoena (the "Global Subpoena") [R. Dkt. 85-6] to Brantley requiring the production of Brantley's records related to the APA and Brantley's representation of Legends and other documents. A copy of the Global Subpoena is attached hereto as Exhibit 12.

## D.   LAW AND ARGUMENT

### 1.   No Grounds for Reconsideration Exist

Global correctly states the standards for a motion for reconsideration, 1) the motion is necessary to correct a **manifest** error of fact or law; 2) the movant presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice, or 4) the motion is justified by an intervening change in the controlling law.

However, Global has completely failed to satisfy these standards. The only standard that Global can even attempt to argue is the first; the others are clearly irrelevant. However, Global fails to show that the Bankruptcy Court's decision was erroneous, let alone manifestly erroneous. In *Papas v. Prince*, 2014 WL 3778684 (E.D. LA 7/20/2014), the court, after reciting the four factors applied to a motion for reconsideration as set forth above, stated:

> A motion for reconsideration is not the proper vehicle for rehashing evidence, legal theories or arguments… (*Templent v. Hydrochem, Inc.*, 367 F.3d 473, 478 – 79, (5th Cir. 2004).) Instead, such motions serve the narrow purpose of allowing a party to correct manifest errors of law or facts or to present newly discovered evidence. *Waltman v. International Paper Co.*, 875 F.2d 468, 473, (5th Cir. 1989). It is well settled that motions for reconsideration should not be used… to re-urge matters that have already been advanced by a party. *Helena Labs Corp. v Alpha Scientific Corp.*, 483 F.2d 538, 539, (citing *Browning v. Navero*, 894 F.2d 99, 100 (5th Cir. 1990).

Reconsideration, therefore, is not to be lightly granted as reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly and the motion must "clearly establish" that reconsideration is warranted. When there exists no independent reasons for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted. *Papas v. Prince*, supra, p. 5.

The Bankruptcy Court's ruling was not **manifestly** erroneous, but, rather, followed controlling Fifth Circuit jurisprudence and the jurisprudence of the Louisiana Supreme Court. Accordingly, for all the reasons herein, the Court should deny reconsideration.

2.     **There Is No Attorney-Client Privilege Because Mr. Brantley Jointly Represented The Parties.**

In its Motion, Global quotes portions of Article 506 of the Louisiana Code of Evidence which sets forth the rules concerning the attorney client privilege. Article 506(C)(5), which is controlling, provides that:

> There is **no privilege** under this article as to a communication:
> ***
> (5) Which is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or other representative to a lawyer or his representative retained or consulted in common, when subsequently offered by one client against the other in a civil action.

(emphasis added).

In *Bridges v. Hertz Equipment Rental Corp.*, 2008-0400, 983 So.2d 1256, 1258, (LA 2008), the Louisiana Supreme Court noted that "[i]t is well settled under Louisiana law that the discovery statutes are to be liberally and broadly construed to achieve their intended objectives." Therefore, the language of Article 506(C)(5) is to be broadly interpreted so as to give deference to the intended objective of prohibiting privilege claims over communications relevant to a dual representation of parties who later become adverse.

The Fifth Circuit has held that in "situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other.  This is true even where the attorney acts jointly for two or more persons having **no formalized business arrangement between them**." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103 (5th Cir. 1970), cert denied 401 US 974, 91 S.Ct. 1191, 28 L.Ed 323 (1971) (emphasis added); *see also*, *Brennan's, Inc. v. Brennan's Restaurant, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("Neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation").  The Louisiana Supreme Court has further held that communications and information received by an attorney while jointly representing two parties is not subject to an attorney-client privilege urged by either party against the other.  *Bohn v. Bohn*, 503 So.2d 467 (LA 1987), *citing Hodges v. Southern Farm Bureau*, 433 So.2d 125 (LA 1983).

In a desperate attempt to conceal Brantley's communications from this Court and Legends, Global previously relied on the case of *Neighborhood Development Collaborative v. Murphy,* 233 F.R.D. 436 (D. Md 2005) in its original *Joint Motion for Protective Order by Global Gaming Parties, the Brantley Law Firm and Joseph P. Brantley, IV,* [Bank. Dkt. P-82, attached hereto as Exhibit 8.] ("Original Motion for Protective Order").  Even a cursory review of this case clearly shows it is factually distinguishable from the instant case.  In *Neighborhood Development*, one of the parties erroneously maintained that there was a joint representation between himself and another party and the attorney.  However, based upon the facts of the case, the court found that the attorney did not represent the party claiming the joint representation.  In the instant case, there is no question that Brantley represented both Global and Legends during the same period of time for the purpose of obtaining Board approval of the APA.

In *Neighbor Development*, the court, applying Maryland law, which is consistent with Louisiana law, did note that if there were joint representation between the two parties by a single attorney, then the attorney client privilege could not be asserted between the parties. The court stated:

> Second, **there is no dispute that parties to a joint representation are barred from asserting the attorney-client privilege as one against another.** Citing *Ashcroft and Gerel v. Shaw*, 126 MD App. 325, 354, 728 A.2d 798 (1999) ("when two or more persons with a common interest engage an attorney to represent them with respect to that interest, the attorney privilege against disclosure of confidential communications does not apply between them.").

*Id.* at 412 (emphasis added).

There is no factual dispute here. Indeed, if both Global and Legends were not jointly represented by Brantley, then there would have been no need for the waiver of conflict letters executed by both parties. Global and Legends both acknowledged that they were both being represented by Brantley for the purpose of securing the required Board approval on behalf of both parties and waived any conflicts.

In the Original Motion for Protective Order, Global cited the case of *Sky Valley Ltd. P'ship v. ATX Sky Valley Ltd.*, 150 F.R.D. 648 (N.D Cal. 1993) as setting forth criteria to establish Dual Representation. Application of the standards set forth in the *Sky Valley* case to the instant case mandates that the Court find that there was a dual representation on a common interest matter and hence no attorney-client privilege as between the parties. The *Sky Valley* requirements are clearly met in the instant case.

The court in *Sky Valley* enunciated eleven factors to consider. *Id.* at 652-653. In considering the factors set forth in *Sky Valley* and its progeny, the Court should consider the following facts: (1) the parties had a mutual goal concerning their joint representation by Brantley, i.e. approval of the APA by the Board, (2) the parties both furnished Brantley with

information and documentation in a joint effort to promote the common goal, (3) the parties each had certain contractual duties to one another under the APA, including the obligations to assist and cooperate in achieving the mutual goal, and to refrain from any conduct that would hinder, delay or prevent the achievement of the common goal, (Global's violation of this covenant is the basis of the current litigation) (4) the parties had an obligation to communicate with each other and to provide each other with documents, records and information involving the common goal and consummation of the APA, and (5) the parties both employed Brantley to achieve the common interest. The parties were not only dependent upon one another to achieve and realize their common interest, but were contractually obligated to do so.  *See*, APA, Art. V, Sec. 5.3.

Here, it is clear that Global and Legends and their attorneys, including Brantley, were working in unison in order to achieve a common goal.  Attached hereto in globo as Exhibit 13 are a string of emails which includes Brantley, the attorneys for Global, including Martin Stringer and Lewis Price, as well as attorneys and representatives of Legends.  These emails conclusively show that Global and Legends were working in unison towards a common purpose. Brantley was ultimately chosen as the attorney for both parties in order to promote the common purpose which would be beneficial to both Global and Legends.

Given these factors and the clear intent of both parties, there can be no question that there was a joint representation by Brantley.  Therefore, the exception found under Article 506(C)(5) is clearly applicable to the instant situation.

### 3.   Legends Is Not Waiving Global's Attorney-Client Privilege; There is No Privilege

Global also presents a convoluted argument that Legends is attempting to waive Global's privilege.  Under Global's reasoning there would be no need for the "common interest"- "dual representation" exception to the attorney-client privilege rules.

Global states on page 6 of its memorandum that, "even if a common interest could exist (which it cannot here), the common interest exception describe in Art. 506(C)(5) **applies only in circumstances which a common interest party offers a communication against another party in a civil action."** Global can cite no cases supporting this interesting interpretation of the law. Neither the Fifth Circuit nor the Louisiana Supreme Court has ever rendered any decisions supporting Global's position.   Global then distorts the intent and meaning of the statute by claiming the privilege is only waived if one party indicates that it will introduce otherwise privileged information to support its positions.   Clearly, such a limited and distorted interpretation would render the "common interest exception" unnecessary and meaningless. Global cannot cite any cases that support its interpretation[10], which blatantly contradicts the language in Article 506(C)(5) that *there is no privilege in a common interest scenario*.[11]

### 4.      <u>Waiver of Privilege</u>

Even assuming, *arguendo*, that Global's communications with Brantley were privileged; Global waived such privilege by placing at issue in this litigation communications with Brantley relating to the Board's approval of the APA.  "Placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail."  *Asset Funding Group, LLC v. Adams & Reese, LLP*, NO: 07-2965, 2008 U.S. Dist. LEXIS 68695, at *13 (E.D. La. Sept. 9, 2008) (citing

---

[10]  The cases cited by Global, *Excess Insurance Co. v. Saunee,* No. 95-CV-3024, 1996 WL 409224 at n. 3 (E.D. La. 7/19/1996), and *In re: Auclair,* 961 F.2d 65, 70, (5th Cir. 1992), are inapposite and do not contain any language supporting Global's position.

[11]  Generally, if a party indicates that it will introduce privileged information at trial, the privilege is waived regardless of whether there is dual representation or not.  *See Conoco, Inc. v. Boh Brothers Construction Co.*, 191 F.R.D. 107, (W.D. LA 7/10/1998); *Succession of Smith v. Kavanaugh Pierson and Talley*, 513 So.2d 1138, (LA 1987); *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547 (S.D. NY 2013); *Conkling v. Turner*, 883 F.2d 431, (5th Cir. 1989).  Under Global's erroneous argument there would be no reason for the "common interest exception" because it would be entirely duplicative of waiver.

*Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1145 (La. 1987)) (finding party "waived any privilege relating to . . . communications" placed at issue, and compelling production); *see also*, *Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998) (finding waiver of privilege and compelling production of documents concerning subjects placed at issue).

If a privilege existed (which Legends disputes), Global waived it by alleging that the *Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012*, which incorporated the APA, would not have been approved by the Board. As Global explains in the *Objection to Defendant's Motion for a Protective Order Precluding Discovery Concerning Feasibility* [Bank Dkt. P-81, attached Exhibit 14] ("Global's Objection"), the First Amended Complaint "clearly conveys Global's concerns that the transaction would not be confirmed or gain regulatory approval." *See* Global's Objection at p. 6-7. By so pleading, Global has squarely placed any relevant advice from counsel at issue in this litigation. In order to properly refute Global's claims, Legends is thus allowed discovery on all communications that speak directly to Global's state of mind on this issue — including communications with Brantley. *See*, *Asset Funding*, 2008 U.S. Dist. LEXIS 68695, at *14.

Global further placed at issue communications with Brantley regarding the Board's approval by asserting that "[t]he Debtors must prove that the APA's conditions precedent would have been satisfied (including … obtaining regulatory approval) in order to prevail on their anticipatory repudiation claims." *See*, Global's Objection at p. 2-3. To be sure, Global repeatedly relies on the affirmative defense that Legends must establish that the APA would have received the Board's approval. *See, e.g.,* Global's Objection at pps. 6-7 ("[T]he Debtors must also prove that the transaction would have received regulatory approval, another prerequisite to

closing under the APA … the Debtors must now convince the Court that the Plan was confirmable and regulatory approval would have been granted.").[12]

Brantley readily admits that his counsel to Global was provided "for the purposes of obtaining regulatory approval" based upon his expertise and experience.  *See* First Affidavit ¶¶ 2 & 5.  Equally important, Brantley was the only counsel retained by either party to assist in obtaining the Board's approval.  As such, communications with Brantley — reflecting his expertise — provide not only the best source of discovery relating to the Board's approval of the APA, and Global's state of mind, but these communications provide the **only** source of discovery on this issue.  To allow Global to withhold these communications would deprive Legends of vital discovery related to both Global's pleadings in its First Amended Complaint and the affirmative defenses asserted by Global.

## E.       **RELIEF REQUESTED**

Legends respectfully prays that the *Motion to Reconsider Order (ECF Doc. No. 106) Denying Global and Joseph P. Brantley, IV's Joint Motion For Protective Order by Global Gaming Parties, the Brantley Firm and Joseph P. Brantley, IV* sought by Global be denied and that Brantley be ordered and directed to provide all of the information and documents as set forth in the Subpoena Duces Tecum, attached hereto as Exhibit 11 and for any further relief which may be just and proper under the circumstances.

**[Signatures on following page.]**

---

[12] Ironically, Global seeks discovery on the same category of documents that it now tries to withhold from Legends. *See* Exhibit 14, Global's Objection at 7 ("Specifically, Global seeks discovery on … the likely actions of the gaming regulators.").

This 12th day of September, 2014.

Respectfully submitted,

/s/ Barry W. Miller

_____

William H. Patrick, III, La. Bar No. 10359
Barry W. Miller, La. Bar No.  09678
Drew R. Ballina, Bar No.01704
**Heller, Draper, Patrick, Horn & Dabney, L.L.C.**
9311 Bluebonnet Blvd.
Baton Rouge, LA  70810
Phone (225) 767-1499
Email:  wpatrick@hellerdraper.com
            bmiller@hellerdraper.com
**Counsel for Debtors / Legends**


Andrew K. Glenn (admitted *pro hac vice*)
Olga L. Fuentes-Skinner (admitted *pro hac vice*)
Gunnar Doetker-Martz, (admitted pro hac vice0
**Kasowitz, Benson, Torres & Friedman LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
**Co-Counsel for Debtors / Legends**