UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| GLOBAL GAMING LEGENDS, LLC, *et al.* | : : : | CIVIL ACTION NO. 5:13cv3123 |
| VERSUS | : : | JUDGE HICKS |
| LEGENDS GAMING OF LOUISIANA-1, LLC, *et al.* | : : : | MAGISTRATE JUDGE HORNSBY |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE DENIAL OF THE JOINT MOTION FOR PROTECTIVE ORDER BY GLOBAL GAMING PARTIES, THE BRANTLEY FIRM AND JOSEPH P. BRANTLEY, IV**

Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC, Global Gaming Solutions, LLC (collectively "Global") submit this reply in support of *Plaintiffs' Motion for Reconsideration of the Denial of the Joint Motion for Protective Order by Global Gaming Parties, the Brantley Firm and Joseph P. Brantley, IV*. (Bankr. Doc. No.115; ECF Dkt. No. 110) ("Motion for Reconsideration").[1] Global respectfully requests that this Court grant the Motion for Reconsideration and reverse the ruling of the Bankruptcy Court, because it committed manifest errors of law and fact in finding that the Brantley Firm and Joseph P. Brantley ("Mr. Brantley") jointly represented Global and the Debtors and eviscerating the properly claimed attorney-client privilege held by Global.[2]

**INTRODUCTION**

Mr. Brantley had represented Legends for some years prior to Global becoming engaged to purchase the Legends casino properties. Because Global is an out of state entity and needed to be licensed and approved by the Louisiana Gaming Control Board to own and operate the

---
[1] The *Joint Motion for Protective Order* is found at ECF Dkt. No. 99.
[2] The Legends Defendants are collectively referred to as the "Debtors" or "Legends."

1

Louisiana casinos, Global had to engage Louisiana regulatory counsel, and retained Mr. Brantley to represent it in connection with obtaining Louisiana regulatory approval, with knowledge that Mr. Brantley had acted as counsel for Legends. Mr. Brantley obtained from Legends the necessary conflict waiver and agreement so that Global could retain him—not in connection with Legends' dealings with regulators, or to work with Legends in connection with the asset purchase agreement—but to assist Global with gaining regulatory approval to own operate the casinos it would purchase from Legends.

In part, the Debtors accuse Global of repudiating the APA by failing to use good-faith efforts to obtain licensing from the Louisiana and Mississippi gaming boards.[3] Believing that Global's privileged communications with Mr. Brantley may help prove their claim, the Debtors subpoenaed all communications and documents relating to Mr. Brantley's representation of Global. Global opposed with a motion for protective order. To evade the attorney client privilege, the Debtors have retroactively manufactured an argument that an *ad hoc* dual-representation existed, to wit:

- Mr. Brantley has represented the Debtors in "regulatory matters" since 2006;
- In 2012, Global hired Mr. Brantley "to advise it in connection with acquiring regulatory approval from the State of Louisiana" necessary for Global to own and take over Legends' casinos;
- Global's procurement of gaming licenses and regulatory approval is a "regulatory matter" of interest to Legends;
- Therefore, Mr. Brantley jointly represented the Debtors and Global in a matter of common interest, and Global's privilege with Mr. Brantley is eviscerated.[4]

---

[3] *See* Legends' Counterclaim filed as First Amended Complaint, at ¶58. [ECF Dkt. No. 35].
[4] *See* Hr'g. Tr. 95:22–97:22, Sept. 25, 2013 (attached as Exhibit 1 to Global's Mem. In Support Of Motion for Reconsideration) (describing how the Debtors and Global are a "textbook" example of dual-representation.) [ECF Dkt. No. 111-1].

The Bankruptcy Court found that Global and Legends were "co-clients" and that Global could not assert the attorney client privilege. This Court should reverse the Bankruptcy Court and put an end to the gamesmanship.

The only issue before the Court is whether Global and the Debtors were "co-clients" of Mr. Brantley in the matter of Global obtaining regulatory approval to own and operate the Debtors' casinos. Global says they were not. Mr. Brantley, the attorney, says they were not. But—now in pursuit of a litigation strategy—the Debtors say they were.

The Bankruptcy Court committed manifest error by failing to consider: (i) a declaration from Mr. Brantley that states without qualification that Global was not a co-client, that he represented Global solely with respect to the regulatory matters for which he was retained, and (ii) Legends complete failure to adduce any evidence establishing a "co-client" representation. Ignoring the record, the Bankruptcy Court committed legal error by eradicating Global's attorney-client relationship and privilege with Mr. Brantley.

But the Bankruptcy Court also knew that it might be wrong, and was willing to rely on other "people in this building" (referencing this Court) with far greater expertise in privilege matters:

> I may be wrong. And it's probably an issue that's as you, Mr. Besen, indicate will come up again. And there are people in this building who are much, much better on this particular issue than am I.
> ….
> And I've already said I do know bankruptcy law and we try to not get involved in protracted litigation here…I don't profess to be an expert on this particular [privilege] matter. [5]

To facilitate review and make certain its ruling did not go into effect, the Bankruptcy Court even granted a stay of its ruling in open court and within its written order.

---

[5] *See* Hr'g. Tr. 118:14–17, 126:11–13, 126:19–20, Sept. 25, 2013 [ECF Dkt. No. 111-1]. The September 25, 2013 hearing transcript excerpts are attached hereto as Exhibit 1.

3

The mere fact that two parties share an attorney and have a common interest is insufficient to create a dual representation. A dual-representation requires a "detailed factual determination of the understanding of the parties and the lawyer in light of the circumstances."[6] As the case law cited by the Debtors demonstrates, the factual circumstances sufficient for a finding of joint representation are that the parties **jointly** (i) meet with their attorney, (ii) correspond with their attorney, (iii) pay their attorney, or (iv) request or receive legal advice. None of those circumstances are present here. In fact, the evidence adduced at the hearing makes clear that Mr. Brantley **separately** served two clients accomplishing different goals.

Beyond lacking any support in law or fact, the Debtors' dual-representation argument flies in the face of the parties' conduct. If Mr. Brantley jointly represented the Debtors and Global, why were the Debtors excluded from all of Mr. Brantley's communications with Global executives? More importantly, if the Debtors were actually co-clients of Mr. Brantley and were always entitled to his communications with Global, why did the Debtors wait until this litigation to ask for them? If Legends was so interested in being updated on Global's regulatory approval process, why didn't Legends ask Mr. Brantley for updates? Simple. The undisputed evidence shows that Global and the Debtors were never "co-clients" of Mr. Brantley.

## ARGUMENT

### I. MANIFEST ERROR OF LAW: SHARING AN ATTORNEY AND AN INTEREST IS NOT A "DUAL REPRESENTATION"

The Debtors so confused and misstated the dual-representation standard during briefing and oral argument that the Bankruptcy Court essentially punted the issue, stating on the record

---

[6] *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 362 (3d Cir. 2007); *see also In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) (engaging in a detailed factual analysis to determine "if the parties and the attorney [could] reasonably presume that the parties [sought] representation of a common or joint matter"); *Sky Valley Ltd. P'ship v. ATX Sky Valley Ltd.*, 150 F.R.D. 648, 652–653 (N.D. Cal. 1993).

"on this issue I may very well be wrong,"[7] and "it's just necessary that I make a decision" so the parties can appeal.[8] The federal law of privilege applies here and, under federal law, an exception to the attorney-client privilege occurs when the same attorney acts for two or more parties having a common interest. The Debtors incorrectly propose that this dual-representation exception is created simply when the parties having a common interest retain a common attorney.[9] Federal courts and the Restatement[10] have made clear this is not enough:

> It is important to remember that 'clients of the same lawyer who share a common interest are not necessarily co-clients. **Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representation is determined by the understanding of the parties and the lawyer in light of the circumstances.'**[11]

Moreover, the Bankruptcy Court improperly inferred a dual representation from the mere fact that the APA requires Global and Legends to *reasonably* assist and consult with each other for Global to obtain necessary approvals from the regulatory authorities.[12] Federal courts and the Restatement are careful to distinguish a co-client representation from this exact situation "in which a lawyer represents a single client, but another person with allied interests cooperates with

---

[7] Exhibit 1, Hr'g. Tr. 122:4-5, Sept. 25, 2013 [ECF Dkt. No. 111-1].
[8] Exhibit 1, Hr'g. Tr. 126:5-9, Sept. 25, 2013 [ECF Dkt. No. 111-1]..
[9] Legends' Response in Opposition to Global's Motion to Reconsider Order [ECF Dkt. No. 83] ("Legends' Opposition"), at 3 (emphasizing that Brantley represented Global and Legends and both Global and Legends sought APA approval); *id.* at 8 (stating that Brantley was employed by both parties and both parties wanted APA approval); *id.* at 13 ("Here it is clear that Global and Legends and their attorneys, including Brantley, were working in unison in order to achieve a common goal."); Hr'g. Tr. 95:22-97:22 (describing how Legends and Global are a "textbook" example of dual-representation.) [ECF Dkt. No. 111-1].
[10] RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 75 cmt. c., a draft of which was endorsed by the Fifth Circuit in *In re Auclair*, 961 F.2d at 69 n.11.
[11] *In re Teleglobe Comm'ns Corp.*, 493 F.3d at 362 (quoting Restatement (Third) of Law Governing Lawyers § 75 cmt. c.); *see also In re Auclair*, 961 F.2d at 70 (engaging in a detailed factual analysis to determine "if the parties and the attorney [could] reasonably presume that the parties [sought] representation of a common or joint matter"); *Sky Valley Ltd. P'ship*, 150 F.R.D. at 652-53 (listing factors for courts to consider in finding dual representation). That rule is also entirely consistent with the Louisiana Code of Evidence Article 506(C)(5), which requires—not only that the attorney represent both parties in a matter of common interest, but that the parties have "retained or consulted [the attorney] in common" and a communication be "subsequently offered by one client against the other in a civil action." Global has not attempted to offer any communication by Mr. Brantley against the Debtors; therefore, even the Louisiana exception does not apply.
[12] *See* Exhibit 1, Hr'g. Tr. 116:12-23, Sept. 25, 2013 [ECF Dkt. No. 111-1].

the client and the client's lawyer."[13] Thus, contrary to the Bankruptcy Court's mistaken belief, the Debtors' contractual obligation to cooperate with Global and Mr. Brantley does not somehow transform the parties into Mr. Brantley's co-clients.[14]

Rather, before finding dual representation—as the Bankruptcy Court did—the law requires the court to make a "detailed factual determination of the understanding of the parties and the lawyer in light of the circumstances."[15] In making that determination, the court must examine "how the parties interact with the joint attorney[] and with each other."[16] The Bankruptcy Court failed to do so. Instead, it retroactively re-characterized the attorney-client relationship between Global and Mr. Brantley as a dual representation without any support in fact or law.

If the Bankruptcy Court had applied the proper standard, its ruling would clearly have been different because even a cursory review of the Debtors' "textbook" dual-representation cases make clear that the parties' interactions with Mr. Brantley look nothing like a dual representation:[17]

- *Garner v. Wolfinbarger* lists examples of typical co-clients, such as partners, makers of mutual wills, joint trustors, and an insured and insurer in an automobile death action.[18] Absent from this list are counterparties to a transaction like Global and the Debtors.
- *In re Auclair* found that three parties were co-clients, because they met together with the attorney to discuss possible representation and "neither by word nor deed did [they] evidence any intention contrary to a common interest representation."[19] As discussed below, the Debtors have offered no evidence that they and Global ever jointly met with

---

[13] *In re Teleglobe Comm'ns Corp.*, 493 F.3d at 362 (quoting Restatement (Third) of Law Governing Lawyers § 75 cmt. c.).
[14] *Id.*
[15] *Id*; *In re Auclair*, 961 F.2d at 70 (engaging in a detailed factual analysis to determine "if the parties and the attorney [could] reasonably presume that the parties [sought] representation of a common or joint matter"); *Sky Valley Ltd. P'ship*, 150 F.R.D. at 652-53.
[16] *In re Teleglobe Comm'ns Corp.*, 493 F.3d at 362; *In re Auclair*, 961 F.2d at 70.
[17] Debtors Response in Opposition at 5. [ECF Dkt. No. 83].
[18] 430 F.2d 1093, 1103 (5th Cir. 1970).
[19] 961 F.2d at 70.

- Mr. Brantley and Mr. Brantley expressly states in his declaration that he did not dually represent the parties.[20]

- *Brennan's, Inc. v Brennan's Restaurants, Inc.* found that a parent and its subsidiary were jointly represented, when an attorney prosecuted a trademark used by both companies, and his retainer for the work was paid by both companies pro rata.[21]  Here, Global and the Debtors are not within the same corporate family, Global was represented by Mr. Brantley to complete and obtain its own gaming authority approvals, and the Debtors have offered no evidence that Global and the Debtors split Mr. Brantley's legal bills or even that Mr. Brantley communicated to the supposed "co-clients" together on any privileged matter.

- *Bohn v. Bohn* involved a husband and a wife who consulted the same attorney to obtain a divorce.  Once again the Debtors have offered no evidence that they and Global ever jointly requested or received legal advice from Mr. Brantley.[22]

In other words, the law requires more than just two parties retaining the same attorney and a having a common interest in achieving an objective (such as closing an asset purchase agreement); those cases contemplate co-clients that—at least to a limited degree—**jointly** meet, correspond, pay, or request/receive legal advice with their attorney.

For all these reasons, the Bankruptcy Court committed a manifest error of law in ruling that Mr. Brantley dually represented Global and the Debtors.

## II.   ERROR OF FACT:  NO RECORD EVIDENCE EXISTS THAT MR. BRANTLEY JOINTLY REPRESENTED GLOBAL AND THE DEBTORS

The Bankruptcy Court not only applied wrong legal standard, it also committed a manifest error of fact by finding dual representation, absent any evidence that Mr. Brantley jointly represented Global and the Debtors.  In fact, all record evidence indicates that Mr. Brantley separately represented the parties.

Global affirmatively claims (and has established) that they were not co-clients with the Debtors.  Mr. Brantley—the attorney—agrees, so much that he joined Global's Motion for a Protective Order as a co-mover to prevent disclosure of his privileged communications with

---

[20] First Brantley Decl. at ¶ 7. [ECF Dkt. No. 111-2].
[21] 590 F.2d 168, 170-72 (5th Cir. 1979).
[22] 503 So.2d 467 (La. 1987).

Global.[23] He even provided a sworn declaration, stating that his "representation of Global was *separate and distinct from the firm's representation of Legends*."[24] This is consistent with Global's engagement letter with Mr. Brantley, which states that he represented Global—not Global and the Debtors.[25] Even Mr. Brantley's second declaration, obtained by the Debtors to support their position, clearly states "Brantley was employed *by Global* to provide legal services and advice *to Global* in order to obtain the required regulatory approval and licensing . . . ."[26] It does not say that Brantley was employed by *both* Global and the Debtors to provide *them* legal services on a common interest issue.[27]

Global's and the Debtors' respective conflict waivers also show that neither party nor Mr. Brantley believed that Global and the Debtors were co-clients. Global's conflict waiver, for example, asked Global to waive any conflicts that existed "with respect to [Mr. Brantley] representing Legends and its affiliates *in other matters*."[28] Similarly, the Debtors agreed to waive "the conflict of interest, which exists with respect to [Mr. Brantley] representing Global and its affiliates in Regulatory Matters *and other matters unrelated to Legends*."[29] Tellingly, neither waiver mentions a dual representation. Given that the Professional Rules require a lawyer to obtain informed consent about the specific conflicts associated with a dual representation arrangement,[30] the absence of any such informed consent in the conflict waivers reflects that a dual representation arrangement was never contemplated by Mr. Brantley and the parties. Based on that evidence alone, this Court should find that the Bankruptcy Court

---

[23] *See* Joint Motion for Protective Order. [ECF Dkt. No. 99].
[24] First Brantley Decl. at ¶ 7 (emphasis added). [ECF Dkt. No. 111-2].
[25] Retainer Agreement at 1, attached as Exhibit A to First Brantley Decl. [ECF Dkt. No. 111-2].
[26] Brantley Decl. ¶ 7 attached as Exhibit 2 to Legends Opposition and Response to Global's Motion for Reconsideration ("Second Brantley Decl."). [ECF Dkt. No. 83-2].
[27] *Id.*
[28] Global's Conflict Waiver at 1, attached as Exhibit B to First Brantley Decl. [ECF Dkt. No. 111-2].
[29] Debtors' Conflict Waiver at 1, attached as Exhibit 9 to Legends Opposition and Response to Global's Motion for Reconsideration ("Second Brantley Decl."). [ECF Dkt. No. 83-9].
[30] Louisiana Rule of Professional Responsibility 1.7 cmt. 30-31.

committed a manifest error of fact by finding that Global and the Debtors were Mr. Brantley's co-clients.

But even more convincing than what is in the record, is what is *not* in the record. The Debtors have submitted no evidence that they and Global jointly met with Mr. Brantley to discuss their joint representation or to jointly obtain legal advice; no evidence of joint payment or fee payment sharing agreement. They have identified no letter, e-mail, or memorandum from Mr. Brantley to both the Debtors and Global containing his legal advice to them. They have shown no evidence of communications from either Legends or Global to Mr. Brantley where the other party was copied that involve legal advice requested. Tellingly, the Debtors have shown no attempt by them to obtain Global's communications with Mr. Brantley prior to this litigation, which presumably they could and should have done if they truly believed they were co-clients with Global. At the very least, the Debtors could have submitted a declaration, detailing the facts and circumstances that led them to believe that they were jointly represented with Global. They did not. Global in no way ever intended its retention of Mr. Brantley to be joint representation with Legends.[31]

In fact, the *only* real evidence the Debtors have submitted in support of their position is an e-mail from Mr. Brantley that (1) was not sent to anyone at Global and (2) does not contain any legal advice.[32] The Debtors offer no declaration from the client itself, no evidence of (a)

---

[31] Although Legends had an interest in selling its casinos, it did not and could not share Global's interest in making adequate, accurate representations to the regulatory authorities, which was the basis of Mr. Brantley's legal advice to Global. Global, not Legends needed (i) regulatory approval to purchase, own, and operate the casinos, (ii) needed to submit confidential information about responsible and control persons so that it could be found suitable to be involved as casino owner, (iii) needed to interact, through Mr. Brantley, with the regulatory agencies in charge of approval. Legends clearly was not a participant in Global's regulatory approval process, Mr. Brantley needed no privileged information from Legends to assist him in his representation of Global and he shared no privileged information received from Global with Legends.

[32] Exhibit 13 attached to Legends Opposition in and Response to Global's Motion to Reconsider Order Denying Global and Joseph P. Brantley IV's Joint Motion for Protective Order ("Response to Global's Motion for Reconsideration") [ECF Dkt. No. 83-13].

joint intent, (b) a fee sharing agreement, (c) joint communications requesting or giving legal advice to both parties, or (d) communications from Mr. Brantley to both parties containing legal advice.  Finally, the Debtors' Response to Global's Motion for Reconsideration contains what it purports are undisputed facts; however, those facts are either disputed facts or improper argument.[33]  But even taking all the supposed facts as true (and disregarding the legal argument), those support nothing more than the proposition that Mr. Brantley separately represented Global and the Debtors on separate Louisiana law and regulatory issues and that Global and Legends were counterparties to the APA.  Global's attorney-client privilege with Mr. Brantley must therefore remain intact.

### III.   THERE HAS BEEN NO AT-ISSUE WAIVER HERE

The Debtors again confuse basic privilege law by arguing that an at-issue waiver entitles them to Global's privileged communications with Mr. Brantley.  An at-issue waiver applies when the legal advice, itself, forms a material part of a claim or defense, such as with a legal malpractice claim or an advice-of-counsel defense.[34]  For an at-issue waiver to be applicable here, Global would have to argue that Mr. Brantley's legal advice somehow excused Global from its obligation to perform under the APA.  That is not—nor has it ever been, nor will it ever be—Global's position.  Therefore, an at-issue waiver does not apply, and the Debtors have no basis to obtain Global's privileged communications with Mr. Brantley.

### CONCLUSION

For the foregoing reasons, Global respectfully request that this Court GRANT the Motion for Reconsideration, because the Bankruptcy Court committed manifests errors of law and fact in ruling that Mr. Brantley jointly represented Global and the Debtors.

---

[33] Legends Opposition and Response to Global's Motion for Reconsideration at 7-8, ¶¶ 7-9. [ECF Dkt. No. 83].
[34] *See Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (applying Louisiana law); *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, No. 11-633-JJB-RLB, 2014 WL 29451, *6 (M.D. La. 2014).

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM, DUPLANTIS & EAGAN, LLC**

By: /s/ Louis M. Phillips
Louis M. Phillips (La. Bar No. 10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
E-mail: lphillips@gordonarata.com

- AND -

Patrick ("Rick") M. Shelby (La. Bar No. 31963)
Meredith S. Grabill (La. Bar. No. 35484)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
E-Mail: pshelby@gordonarata.com
E-mail: mgrabill@gordonarata.com

- AND -

**Dentons US LLP**
C. Michael Moore
Gene R. Besen
2000 McKinney Ave, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
Email: mike.moore@dentons.com
Email: gene.besen@dentons.com

***Attorneys for Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Solutions, LLC and Global Gaming Bossier City, LLC***

11

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of foregoing pleading was served upon those parties below receiving electronic notification via the District Court's CM/ECF System, on the 3rd day of October 2014.

    Glenn L. Langley on behalf of Intervenor Ad Hoc Group of First Lien Lenders - glangley@hss-law.net, kstephens@hss-law.net, srussell@hss-law.net

    Barry W. Miller on behalf of Plaintiff Legends Gaming of Louisiana-1, LLC - bmiller@hellerdraper.com, rterrebonne@hellerdraper.com, kfritscher@hellerdraper.com

    William H. Patrick on behalf of Plaintiff Legends Gaming of Louisiana-1, LLC wpatrick@hellerdraper.com

**October 3, 2014**
Baton Rouge, Louisiana.

                                                                */s/ Louis M. Philips*_____
                                                                Louis M. Phillips (La. Bar No. 10505)

82917800\V-2