# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| **GLOBAL GAMING LEGENDS, LLC,**[1] *et al.* | : : : | **CIVIL ACTION NO. 13-3123** |
| **VERSUS** | : : : | **JUDGE HICKS** |
| **LEGENDS GAMING OF LOUISIANA-1, LLC**[2], *et al.* | : : : | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM OF LAW IN SUPPORT OF LEGENDS' MOTION TO COMPEL AND MOTION TO QUASH  OR FOR PROTECTIVE ORDER

Legends, as Defendants and Plaintiffs-in-Counter-Claim, respectfully moves the Court: 1) to compel Global to proceed immediately with depositions, pursuant to Fed. R. Civ. P. 26(d)(2)(A); 2) to quash, pursuant to Fed. R. Civ. P. 45(d)(3), Global's Rule 30(b)(6) deposition notice dated December 22, 2014, seeking testimony on an extensive list of topics concerning Legends' Document Custodian efforts (the "Document Custodian Deposition") (Declaration of Andrew K. Glenn ("Glenn Decl.") ¶ 4 & Ex. A [Dec. 16, 2014 e-mail from L. Phillips to O. Fuentes enclosing *Notice of Rule 30(b)(6) Deposition and Subpoena Duces Tecum*, noticed for Dec. 22, 2014].); and, in the alternative to the motion to quash, 3) for a protective order, pursuant to Fed R. Civ. P. 26(c), limiting the scope of the Document Custodian Deposition.

---

[1]     Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, and Global Gaming Solutions, LLC (collectively, "Global").

[2]     Legends Gaming of Louisiana-1, LLC; Legends Gaming of Louisiana-2, LLC; Legends Gaming, LLC; Legends Gaming of Mississippi, LLC; and Louisiana Riverboat Gaming Partnership (collectively, "Legends").

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ........................................................ 3

LEGAL STANDARD ............................................................................................................ 9

ARGUMENT ........................................................................................................................ 12

    A. Global Should Be Compelled to Proceed With The Depositions of Its Own Witnesses ....... 12

    B. The Document Custodian Deposition Should Be Quashed Or Modified Because Global Is Not Seeking This Discovery In Good Faith .......................................................... 14

    C. The Deposition Should Be Quashed Or Limited By A Protective Order Because It Is Harassing, Irrelevant To This Litigation, Will Result In Significant Burden And Expense Outweighing Any Potential Benefit, And Seeks Privileged Information. ............................ 15

        1. The record is clear that Legends has far exceeded its discovery obligations. ................. 15

        2. The Document Custodian Deposition will result in significant burden and expense. ...... 17

        3. Global seeks information that is privileged. ................................................................... 18

CONCLUSION AND PRAYER FOR RELIEF ........................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Baptist Hosps.*,
   172 S.W.3d 136 (Tex. Ct. App. 2005) .................................................................................19

*Cannata v. Wyndham Worldwide Corp.*,
   No.2:10-CV-00068, 2011 WL 3495987 (D. Nev. Aug. 10, 2011) .........................................18

*Choice, Inc. of Tex. v. Graham*,
   226 F.R.D. 545 (E.D. La. 2005)............................................................................................10

*Conoco Inc. v. Boh Bros. Const. Co.*,
   191 F.R.D. 107 (W.D. La. 1998) ...........................................................................................11

*Cornelius v. Eberstein & Witherite, LLP*,
   No. 3:13-cv-3886-P, 2014 U.S. Dist. LEXIS 132751 (N.D. Tex. Sept. 19, 2014).................13

*In re Exxon Corp.*,
   208 S.W.3d 70 (Tex. Ct. App. 2006) .....................................................................................19

*Exxon Research & Eng'g Co. v. United States*,
   44 Fed. Cl. 597 (Fed. Cl. 1999) ............................................................................................11

*Faulkner v. ICF Int'l*,
   No. 07-932-RET-SCR, 2008 U.S. Dist. LEXIS 78082 (M.D. La. Oct. 3, 2008) .....................9

*In re Honeywell Int'l, Inc. Sec. Litig.*,
   230 F.R.D. 293 (S.D.N.Y. 2003) ...........................................................................................12

*Major Tours, Inc. v. Colorel*,
   No. 05-3091, 2009 WL 2413631 (D.N.J. Aug. 4, 2009) ........................................................18

*Martin v. Koch Indus.*,
   No. 11-cv-1413, 2012 WL 6463002 (W.D. La. Dec. 12, 2012) .............................................11

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
   134 F.R.D. 275 (N.D. Cal. 1991)...........................................................................................11

*Rice v. Reliastar Life Ins. Co.*,
   No. 11-44-BAJ-CN, 2011 WL 5513181 (M.D. La. Nov. 10, 2011)........................................10

*S. Filter Media, LLC v. Halter*,
   No. 13-116-JJB-RLB, 2014 U.S. Dist. LEXIS 22752 (M.D. La. Feb. 21, 2014)...............9, 13

*SmithKline Beecham Corp. v. Apotex Corp.*,
   No. 99-CV-4304, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004)...............................................11

iii

*Westinghouse Elec. Corp. v. Carolina Power & Light Co.*,
  No. 91-4288, 1992 WL 300796 (E.D. La. Sept. 22, 1992) ..................................................... 10

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................. *passim*

Fed. R. Civ. P. 30 ................................................................................................. *passim*

Fed. R. Civ. P. 45 ................................................................................................. 10

## PRELIMINARY STATEMENT

This case is a relatively simple dispute arising from Global's irrefutable repudiation and breach of a purchase agreement to acquire substantially all of Legends' assets.  Global is now conducting this litigation in the same pattern of bad faith it demonstrated during the course of its contractual relationship with Legends.  With respect to the merits of this litigation, Global has attempted to manufacture and create certain defenses unsupported by the facts or the law.  In seeking the Document Custodian Deposition — and unilaterally staying depositions — Global again is desperately seeking to manufacture a defense to its unjustifiable and bad faith repudiation and breach of its contract with Legends.

As evidenced by Global's course of conduct culminating in its recent unilateral stay of all depositions and a barrage of harassing emails from its counsel, Global is not conducting discovery in good faith.  On Monday December 15, 2014, Global filed a *Motion to Extend Deadline for Filing Motion to Compel* [R. Doc. 166] (the "Extension Motion") based on the representation that Legends unreasonably withheld consent to Global's request for an extension on its motion to compel in the Scheduling Order.  (Extension Motion at 2–3 ("Legends is playing games and finds it amusing to impinge on the holiday plans of those representing and working for Global.").)  This representation was false.  Legends previously had granted extensions on this and other deadlines, and, indeed, Legends has offered to extend the deadline for as long as Global reasonably requests.  Global first requested the extension referenced in the Extension Motion by e-mail at 9:10 p.m. on *Sunday, December 14, 2014*, and filed the Extension Motion the next day, before Legends had the opportunity to respond.  Moreover, immediately after the filing, Legends consented to an extension of the motion to compel deadline well beyond the holidays.  With that, Global should have withdrawn the Extension Motion.  It did not, and the

Court entered an Order [R. Doc. 167] (the "December 17th Order"), granting the Extension Motion before Legends had the opportunity to file its opposition. The Court noted that "Counsel are expected to extend all appropriate courtesies to each other during this case, especially so during the holiday season." The Court may have surmised based on Global's erroneous submission that Legends had denied Global reasonable extensions. In fact, as stated above, Legends had granted extensions and was prepared to grant another extension before Global's precipitous filing. Unfortunately, the Extension Motion has ramifications far beyond the extension of one deadline, and apparently was a strategic ploy to delay this case.

The proposed order accompanying the Extension Motion linked the motion to compel deadline to the date of completion of a Rule 30(b)(6) deposition of Legends' document custodian. Global is now taking the position that no depositions can proceed until after this Rule 30(b)(6) deposition is completed, effectively granting itself the stay of discovery to which Legends objected immediately before Global filed the Extension Motion. As explained below, the Rule 30(b)(6) deposition contemplated by Global is improper given the parties' prior agreement on the production of documents following extensive negotiations. The Document Custodian Deposition is unnecessary and abusive in light of the significant efforts Legends undertook to produce documents in this matter *to resolve all disputes about Legends' document production and avoid incurring the expense and delays attendant to motion practice on these issues*. Global's tactics seek nothing more than delay and harassment.

Legends has no objection to a further extension of the motion to compel deadline, and has so advised Global. However, Legends respectfully submits that all discovery should proceed immediately, and Global's Rule 30(b)(6) notice should be quashed or limited by a protective order.

## BACKGROUND AND PROCEDURAL HISTORY

As Global knows, Legends has far exceeded its discovery obligations to avoid the delay and unnecessary expense of motion practice.  Through the end of 2013 when this case was stayed by the Bankruptcy Court, Legends produced 77,477 pages in response to Global's requests for production of documents.  (Declaration of Shalini Kisten Rajoo ("Rajoo Decl.") ¶ 4.) Legends then considered its document production obligations substantially complete based on the documents on its server.  However, once the case resumed before this Court— in September 2014—Global alleged during meet and confer correspondence "that Legends' prior document productions were deficient because:  (1) Legends' production of internal communications was inadequate; (2) Legends had not produced a wide range of documents related to the day-to-day management of its business operations; and (3) Legends had failed to produce documents related to the feasibility of its proposed bankruptcy plan."  (Legends' 56(d) Opp'n [R. Doc. 152], at 4.)

Legends wants this case to go to trial as expeditiously as possible.  Thus, as a compromise to resolve these disputes expeditiously and *to avoid costly motion practice and delay*, Legends worked diligently to produce documents responsive to Global's informal requests.  Legends voluntarily obtained backup data tapes from the relevant time period and restored them, bearing the out-of-pocket cost of restoration of approximately $85,000.  (Rajoo Decl. ¶ 5.)  Through meet and confer discussions, both by phone and in writing, Global proposed, and Legends agreed, that Legends' earlier production of internal communications would be supplemented as follows:  (i) by producing any non-privileged documents responsive to broad subject categories Global identified in its October 15, 2014 meet and confer letter, from Legends' prior document collection, assuming such documents had not already been produced, and from the universe of documents restored from Legends' backup tapes; and (ii) by producing

3

any non-privileged documents responsive to Global's search terms, provided in its October 15, 2014 meet and confer letter, from Legends' prior document collection, assuming such documents had not already been produced, and from the universe of documents restored from Legends' backup tapes. (Rajoo Decl. ¶ 6.)(Glenn Decl., ¶ 21 & Ex. B [Nov. 14, 2014 e-mail from Gene Besen to Andrew Glenn] at 3.) In the course of this latter document production, Legends did not withhold documents based on relevance and, with Global's agreement, but reserved its right to object to any further discovery relating to these irrelevant matters and the admissibility of irrelevant documents. (Glenn Decl. ¶ 21 & Ex. B [Nov. 14, 2014 e-mail from Gene Besen to Andrew Glenn].) Global agreed that these efforts would settle all disputes about Legends' purported discovery deficiencies. (*Id.*) Legends made these concessions upon Global's representations. (Glenn Decl. ¶ 12.)

Legends also has repeatedly accommodated Global with courtesy extensions to the scheduling order [R. Doc. 164] (the "Scheduling Order") entered in this case. Indeed, Legends consented to Global's request for an extension to its deadline to file a motion to compel on at least two occasions before Global filed its Extension Motion on December 15, 2014 [R. Doc. 166]. Pursuant to the Scheduling Order, Global's motion to compel deadline fell "two (2) weeks after the date the responding party gives written confirmation by e-mail that a party's discovery responses and/or document production are complete in all material respects ("Final Response Date"). The Final Response Date shall be no later than November 30, 2014." Because the Final Response Date fell on a Sunday, Legends wrote to Global on Monday, December 1, 2014, providing written confirmation that Legends' discovery responses and document production were complete in all material respects — thereby starting the two-week clock for Global to submit its motion to compel. (Glenn Decl. ¶ 22 & Ex. C [Dec. 1, 2014 e-mail from O. Fuentes to

4

G. Besen and L. Phillips].)  By this point, Legends had supplemented its interrogatory responses and produced to Global more than 203,352 pages. (Glenn Decl. ¶ 13.)  Global has produced only 58,267 pages in this litigation.  (*Id.*)

Then, for the first time, Global's counsel took the position that, because Legends had not produced a final privilege log on the Final Response Date, Legends' "discovery production and/or document production" was not complete in all material respects.  (Glenn Decl. ¶ 23 & Ex. D [Dec. 1, 2014 e-mail from G. Besen to O. Fuentes].)  The Scheduling Order, which Global extensively negotiated and drafted, made no mention of a final privilege log.  A week later, counsel for Global made unsubstantiated allegations that Legends violated the Scheduling Order and then Global proposed a standstill of this action pending the Court's resolution of the motion for summary judgment.  (Glenn Decl. ¶ 24 & Ex. E [Dec. 9, 2014 e-mail from L. Phillips to A. Glenn].)  Legends did not consent to Global's request for a standstill but did offer Global additional time to file its motion to compel following Legends' submission of a final privilege log.  Legends reiterated its position that a privilege log was not subsumed into the definition of "discovery responses and/or document production."  (Glenn Decl. ¶ 25 & Ex. F [Dec. 11, 2014 e-mail from O. Fuentes to L. Phillips].)[3]  Counsel for Legends nevertheless agreed that Global could have two weeks after Legends produced a final privilege log to submit its motion to compel.  (*Id.*)  On December 12, 2014, Legends served its supplemental privilege and redaction logs along with a supplemental production of documents that it determined were not privileged. (Glenn Decl. ¶ 26 & Ex. G [Dec. 12, 2014 e-mail from G. Doetker-Martz to G. Besen and L. Phillips].)

At 9:10 p.m. on *Sunday*, December 14, 2014, counsel for Global sent an e-mail alerting

---

[3]     Indeed, Global produced its final privilege log on October 2, 2014, well after the deadline for producing documents in the Scheduling Order.

Legends' counsel that under the parties' current understanding, Global's motion to compel would be due on December 26, 2014—the day after Christmas.  (Glenn Decl. ¶ 27 & Ex. H [Dec. 14, 2014 e-mail from L. Phillips to O. Fuentes].)  Rather than simply request Legends' consent to an extension of time on this deadline — which Legends would have readily provided — Mr. Phillips's e-mail misrepresented the discovery record and asserted the need for a 30(b)(6) deposition on Legends' Document Custodian and collection efforts, writing: "we will need a 30(b)(6) deposition of at least the person in control of Document Custodian and collection (and of course maybe others), *which we will set after we file our motion to compel*."  (*Id.*) (emphasis added)  While Legends' counsel was preparing a response to Mr. Phillips's Sunday night e-mail, less than 24 hours after that email and without any reasonable effort to meet and confer with Legends' counsel, Global filed the Extension Motion on December 15, 2014.  In its proposed order, Global unilaterally proposed the following modification to the Amended Scheduling Order:  the "deadline as set forth in paragraph 2 of the Amended Scheduling Order for the filing of a motions to compel by Global is hereby extended to the later of January 5, 2015 and five (5) days after the completion of a Rule 30(b)(6) deposition of the Legends' representative deposition regarding the Legends production and responses." (Extension Motion, at 13.)  Without advising the Court of Legends' objections to the Document Custodian Deposition, Global's proposal required that a 30(b)(6) deposition on Document Custodian occur *before* Global would be required to file its motion to compel.

On December 16, 2014, counsel for Global e-mailed Legends its first *Notice of Rule 30(b)(6) Deposition and Subpoena Duces Tecum*, noticed for December 22, 2014 (the "Rule 30(b)(6) Notice").  (Glenn Decl. ¶ 4 & Ex. A).  This notice contained, among other procedural errors, past dates from October 2014 as deadlines.  (*Id.*)  The Rule 30(b)(6) Notice seeks a

representative on, among other topics, Legends' "decision to restore back-up tapes," "efforts to identify relevant custodians," "efforts to preserve documents potentially relevant to this litigation," and "efforts to collect and produce documents responsive to Global Gaming's First Request for Production to Debtors," and "[t]he comparison of the documents that exist and can be retrieved from the Legends' document and information systems against what documents and information can be retrieved from restoring back-up tapes." (*Id.*)

As discussed below in section B, there is no doubt that Global's request for this deposition is not in good faith. Indeed, Global began informally demanding the Document Custodian Deposition before it had reviewed Legends' supplemental document productions and privilege log and immediately after Legends denied its request to pursue a stay of the litigation. (Glenn Decl. ¶ 27, Ex. H.)

The Rule 30(b)(6) notice seeks the very same information that was already addressed and resolved in the negotiations among counsel concerning Global's purported complaints about Legends' document production. (Glenn Decl. ¶ 10.) As Global's counsel is well-aware from discovery negotiations, counsel for Legends made the decision to restore the back-up tapes. (Glenn Decl. ¶ 8.) Counsel for Legends and counsel to Global agreed on the relevant custodians and agreed on the search terms. (Glenn Decl. ¶ 9.) Counsel for Legends supervised the collection and conducted the review of the documents. (*Id.*) The request for a "comparison of the documents that exist and can be retrieved from the Legends' document and information systems against what documents and information can be retrieved from restoring back-up tapes" is nonsensical. Legends has repeatedly told Global that it has produced all documents from its server and the back-up tape extant as of December of 2012. (Glenn Decl. ¶ 6.) Legends also offered to restore other back-up tapes from earlier periods at Global's expense, but Global

refused this offer.  (Glenn Decl. ¶ 14.)  Most telling is that, after producing tens of thousands of additional pages following the parties' agreement, Global has refused to articulate how Legends' responses are deficient in light of the parties' agreement on document production.  (Glenn Decl. ¶ 16.)  Indeed, Global indicated that it would be seeking this Rule 30(b)(6) Document Custodian Deposition even before it completed its review of Legends' supplemental production.  (Glenn Decl. ¶ 15–16, 27 & Ex. H.)  This strongly suggests that Global's campaign is more about delaying resolution of this case and distracting Legends and the Court from the merits than problems with Legends' document production.

On the same day that Global first served Legends with Notice of the Document Custodian Deposition, counsel for Legends informed Global's counsel of its objection to this deposition. (Glenn Decl. ¶ 28 & Ex. I [Dec. 16, 2014 e-mail from O. Fuentes to L. Phillips].)  Counsel for Legends reiterated its position repeatedly and ultimately informed counsel for Global that Legends would seek a protective order if Global insisted on pursuing the deposition.  (Glenn Decl. ¶ 29–30 & Exs. J–K [Jan. 2 and Jan. 6, 2015 e-mails from  A. Glenn to L. Phillips and G. Besen].)  On January 8, 2015, counsel for Legends made one final attempt to meet and confer with counsel to Legends concerning the scope of the Rule 30(b)(6) notice for the Document Custodian Deposition.  (Glenn Decl. ¶ 17.)  Counsel for Global refused to make any concessions concerning its notice, and instead, took the previously undisclosed and unreasonable position that Global will not produce *its own witnesses* for depositions until the deposition of Legends' document custodian is complete.  (Glenn Decl. ¶ 18.)  In light of Global's position, counsel for Legends once again informed counsel for Global that it would be seeking this protective order against the deposition, which Global had taken it upon itself to schedule for the next day.  (Glenn Decl. ¶ 19.)  Following the numerous previous communications of Legends' position that it was

8

not proceeding with the deposition on the grounds stated herein, counsel for Global proceeded to send harassing emails to counsel for Legends averring that the deposition would proceed. (Glenn Decl. ¶¶ 20, 31 & Ex. L.)  As demonstrated below, this is part and parcel to Global's bad faith and its harassment of Legends and its counsel.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "discovery by one party does not require any other party to delay its discovery."  Fed. R. Civ. P. 26(d)(2)(B).  "It is within the sound discretion of the Court to order discovery to take place in a certain sequence or to specify the time and place for such discovery to occur, should the circumstances warrant such action 'for the parties' and witnesses' convenience and in the interests of justice.'"  *S. Filter Media, LLC v. Halter*, No. 13-116-JJB-RLB, 2014 U.S. Dist. LEXIS 22752, at *7–8 (M.D. La. Feb. 21, 2014) (quoting Fed. R. Civ. P. 26(d)(2)).  Where one party "invokes [Fed. R. Civ. P. 26(d)(2)] for the purpose of either gaining a perceived tactical advantage or denying the plaintiff a perceived tactical advantage, but not 'for the parties' and witnesses' convenience and in the interest of justice,'" the court will not suspend discovery, and depositions will proceed.  *Faulkner v. ICF Int'l*, No. 07-932-RET-SCR, 2008 U.S. Dist. LEXIS 78082, at *2 (M.D. La. Oct. 3, 2008) (directing that "[u]nless the plaintiff consents to postpone the depositions of [defendant's witnesses], their depositions shall be taken as noticed").

The Federal Rules of Civil Procedure further provide that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  "Fed.R.Civ.P. 26(c) permits a court, for good cause, to issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including by forbidding that the requested disclosure or

9

discovery occur or by forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Rice v. Reliastar Life Ins. Co.*, Civ. No. 11-44-BAJ-CN, 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011).  Rule 45 provides that "on timely motion, the issuing court must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A)(iii)–(iv);  *see also Westinghouse Elec. Corp. v. Carolina Power & Light Co.*, Civ. No. 91-4288, 1992 WL 300796, at *4 (E.D. La. Sept. 22, 1992) ("This Court is directed to protect all persons, parties and non-parties alike, from undue burden in responding to a subpoena.").  "Thus, a court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Rice*, 2011 WL 5513181 at *2.

The Federal Rules' requirement of "good cause" before issuance of a protective order means that "the burden is upon the movant to prove the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Choice, Inc. of Tex. v. Graham*, 226 F.R.D. 545, 547 (E.D. La. 2005).  Legends satisfies this burden, and as discussed below, makes particular and specific demonstrations of fact sufficient to warrant a protective order precluding Global's 30(b)(6) Document Custodian Deposition as set forth in the Declaration of Andrew K. Glenn and the Declaration of Shalini K. Rajoo, together with other evidence attached as exhibits thereto, describing the nature of the unreasonable burden caused by Global.  Legends relies on particular and specific demonstrations of fact, as distinguished from conclusory statements, showing that Global's 30(b)(6) deposition, as noticed, is overbroad and seeks discovery of information irrelevant to the issues in this case.

10

A 30(b)(6) discovery request is irrelevant if it is overly broad or otherwise not reasonably calculated to lead to the discovery of relevant evidence. *See Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 114 (W.D. La. 1998) (granting protective order over 30(b)(6) Deposition Notice because "the discovery requests are broader than the scope of discovery and are not reasonably calculated to lead to the discovery of relevant evidence"); *Martin v. Koch Indus.*, No. 11-cv-1413, 2012 WL 6463002 at *1–2 (W.D. La. Dec. 12, 2012).

Further, courts recognize circumstances under which a Rule 30(b)(6) deposition is not the appropriate discovery mechanism for acquiring the desired information and have therefore denied Rule 30(b)(6) depositions in favor of other forms of discovery. *See*, *e.g.*, *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991) (assessing whether contention interrogatories or a Rule 30(b)(6) deposition "would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this"), *overruled* on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991); *see also SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 739959, at *3 (E.D. Pa. Mar. 23, 2004) (concluding that determination as to whether contention interrogatories are more appropriate than Rule 30(b)(6) depositions will be made on a case-by-case basis, and will be guided by concerns for minimizing costs and burdens) (internal quotation marks and citations omitted); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 (Fed. Cl. 1999) (holding that under the circumstances, contention interrogatories were more appropriate than Rule 30(b)(6) depositions).

The Federal Rules further require that "[o]n motion or on its own, the court must limit the frequency or extent of discovery," if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C) & (b)(2)(C)(iii).

## ARGUMENT

Global has unilaterally granted itself a stay of depositions *at least* until the completion of an unnecessary and unduly burdensome deposition, and realistically, far beyond that eventuality. Legends agreed to undertake the extraordinary discovery efforts detailed below with the understanding that such a liberal production would obviate the need to incur future expenses and delay related to Global's purported concerns as to Legends' discovery efforts.  (Glenn Decl. ¶¶ 12, 21 & Ex. B.)  In an apparent bait and switch, Global now seeks a special deposition on these very topics, which are overly broad and otherwise not reasonably calculated to lead to the discovery of relevant evidence. (*See* Glenn Decl. ¶ 4 & Ex. A.)  This Court should not permit Global to cause Legends the annoyance, oppression, and undue burden or expense of this unnecessary and extraordinary discovery.  *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (granting protective order to preclude discovery of non-party accountant's "document retention and destruction policies, and the efforts to preserve, maintain and collect documents" where requests lacked "concrete basis").  And Global certainly should not be permitted to refuse to make its own witnesses available for depositions pending completion of this fishing expedition, which likely will not end with the requested Document Custodian Deposition.

### A.  Global Should Be Compelled to Proceed With The Depositions of Its Own Witnesses.

Following Legends' rejection of Global's proposal to enter into a stay pending resolution of Legends' motion for summary judgment, (*see* Glenn Decl. ¶ 24 & Ex. E), Global has

unilaterally stayed all depositions, purportedly until the completion of the Document Custodian Deposition, but in reality, indefinitely, because Global undoubtedly will contend that Legends' document production remains incomplete.  During a meet and confer with counsel concerning the scope of the Document Custodian Deposition, counsel for Global took the previously undisclosed and unreasonable position that Global will not produce *its own witnesses* for depositions *at least* until the deposition of *Legends'* document custodian is complete.  (Glenn Decl. ¶ 18.)  Indeed, Global did not even expressly agree to resume depositions following the completion of this 30(b)(6) fishing expedition.  (Glenn Decl. ¶ 18.)

The Federal Rules make clear that "discovery by one party does not require any other party to delay its discovery."  Fed. R. Civ. P. 26(d)(2)(B).  Yet this is exactly the prohibited behavior Global has undertaken, as it refuses to cooperate in discovery scheduling and has unilaterally — and indefinitely — suspended all depositions. (Glenn Decl. ¶ 18.)  Here, Global makes the illogical argument that its purportedly legitimate discovery demands to Legends prohibit *Legends* from deposing any of *Global's* witnesses, despite Global making no claim that it requires further discovery from Legends to proceed with the defense of depositions of its own witnesses.  Moreover, "there is no requirement that all disputes regarding written discovery must be resolved to a party's satisfaction before they agree to move on to other forms of discovery," and to suspend discovery, Global must provide "good cause to the court that the defendant's deposition must occur only after the production of additional documents."  *S. Filter Media, LLC*, 2014 U.S. Dist. LEXIS 22752 at *7, 10; *see also Cornelius v. Eberstein & Witherite, LLP*, No. 3:13-cv-3886-P, 2014 U.S. Dist. LEXIS 132751, at *4, 12 (N.D. Tex. Sept. 19, 2014) (ordering defendant to produce witness for deposition before plaintiff's written discovery responses were

due and where plaintiff had not yet produced any documents). Global has failed to provide good cause — or any legitimate reason at all — that Legends may not proceed with depositions.

As demonstrated below in section B, the custodial discovery that Global seeks is overbroad, irrelevant to this litigation, harassing and will result in significant burden and expense outweighing any potential benefit. But even if that were not the case, Global cannot be permitted to unilaterally stay discovery or modify the Scheduling Order as it sees fit or hold the litigation hostage until it has exhausted any discovery disputes it can fabricate. Global cannot credibly contend that it will be prejudiced in having to *defend* the depositions of *Global* witnesses until it has exhausted its knowledge of *Legends'* document preservation and collections. Global should be compelled to proceed with depositions, at least as to its own witnesses.

## B. The Document Custodian Deposition Should Be Quashed Or Modified Because Global Is Not Seeking This Discovery In Good Faith.

It now is evident that Global seeks only to delay this litigation and harass Legends and its counsel. For example:

- As discussed in detail above, Global is using this deposition as a mechanism to unilaterally obtain a stay of this action following Legends' refusal to seek a stay of discovery from this Court pending resolution of the motion to dismiss.

- Counsel for Global proceeded to send a series of harassing emails, (*see* Glenn Decl. ¶ 31 & Ex. L), to counsel for Legends following Legends' reiteration of its well-documented and long-held position that it intended to seek a protective order and would not produce a witness for the Document Collection deposition. Indeed, Global was on notice that Legends would not be producing a witness for this deposition from the date that it served the notice of deposition and at all times thereafter. (Glenn Decl. ¶ 28–30 & Exs. I–K.)

- Global is pursuing this deposition following extensive negotiations in which Global obtained substantial discovery concessions from Legends with the understanding that this would *resolve all disputes about Legends' document production and avoid incurring the expense and delays attendant to motion practice on these issues*. (Glenn Decl. ¶¶ 12, 21 & Ex. B.) The Rule 30(b)(6) notice seeks the very same information that was already addressed and resolved in the negotiations among counsel concerning Global's purported complaints about Legends' document production. (Glenn Decl. ¶ 10.)

14

- Global is aware that much of the information that Global is seeking in its Rule 30(b)(6) notice resides with counsel for Legends and not with a Legends witness. As Legends has repeatedly communicated to Global's counsel, counsel for Legends made the decision to restore the back-up tapes. (Glenn Decl. ¶ 8.) Counsel for Legends and counsel to Global agreed on the relevant custodians and agreed on the search terms. (Glenn Decl. ¶ 9.) Counsel for Legends supervised the collection and conducted the review of the documents. (*Id.*) During the meet and confer, counsel for Legends offered to answer any specific questions in writing, but Global refused. (Glenn Decl. ¶ 17.) Legends has repeatedly told Global that it has produced all documents from its server and the back-up tape extant as of December of 2012. (Glenn Decl. ¶ 6.) Legends also offered to restore other back-up tapes from earlier periods at Global's expense, but Global refused this offer. (Glenn Decl. ¶ 14.)

- Global began informally demanding the Document Custodian Deposition immediately after Legends denied its request to pursue a stay of the litigation and before it had reviewed Legends' supplemental document productions and privilege log. (Glenn Decl. ¶ 27 & Ex. H.)

- Global represented that it would set the deposition for the Document Custodian *after* filing its motion to compel and less than 24 hours later, proposed an order to the Court requiring the completion of the Document Custodian Deposition in order to file its motion to compel *before even noticing the deposition* and without informing the Court of Legends' previously stated objections. (See Glenn Decl. ¶ 27 & Ex. H; Extension Motion at 4.)

- Global has refused to articulate how Legends' responses are deficient in light of the parties' agreement on document production. (Glenn Decl. ¶ 16.)

The Court should neither reward nor countenance Global's abuse of the discovery process.

**C. The Deposition Should Be Quashed Or Limited By A Protective Order Because It Is Harassing, Irrelevant To This Litigation, Will Result In Significant Burden And Expense Outweighing Any Potential Benefit, And Seeks Privileged Information.**

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Here, Global is seeking discovery of largely privileged information and that it cannot demonstrates it needs in light of Legends' extraordinary disclosures and which will not lead to any additional relevant evidence but will be duly burdensome on Legends.

**1. The record is clear that Legends has far exceeded its discovery obligations.**

Global cannot demonstrate that a special deposition concerning Legends' Document Custodian and collection efforts is necessary or how these proposed 30(b)(6) topics are relevant to the resolution of any of the parties' claims or would be likely to lead to the discovery of competent, admissible evidence.  The discovery record to date does not support the need for such a deposition; rather, the record is clear that Legends has been extraordinarily cooperative, transparent and diligent in meeting and exceeding its discovery obligations.  Global's 30(b)(6) topics seek to delay this case and embark on a fishing expedition based on the unreasonable misapprehension that certain unspecified documents *should* exist.

Legends made voluminous document productions in response to Global's First Request for Production to Debtors and subsequent requests in meet-and-confer correspondence.  To date, Legends has produced to Global more than 203,352 pages. (Glenn Decl. ¶ 13.) Any unfounded allegation by Global that documents have been withheld are belied by Legends' restoration of its back-up data tapes, at its own expense, as well as its liberal production of documents generated through search terms crafted by Global's own counsel subject to withholding documents only on the grounds of privilege.  (*See* Rajoo Decl. ¶ 6.)  Global has also failed to demonstrate a good-faith belief that Legends' discovery efforts are flawed, or any basis to believe that Legends has not fulfilled its discovery obligations.

On September 8, 2014, counsel for Global wrote to counsel for Legends regarding Legends' production of documents responsive to Global's First Request for Production to the Debtors.  (Rajoo Decl. ¶ 7 & Ex. A [Sept. 8, 2014 letter from G. Besen to A. Glenn].)  Counsel for the parties met and conferred on three occasions: September 19, September 29, and October 9, 2014.  (Rajoo Decl. ¶ 8.)  Following each meet-and-confer, the parties corresponded regarding the scope of outstanding discovery disputes.  (*See* Rajoo Decl. ¶¶ 9–10 & Exs. B–C [Oct. 2 and

16

Oct. 15, 2014 letters from G. Besen to A. Glenn].)  To satisfy Global's concern regarding any "documents Global believed were responsive and missing from the Debtors' production," Legends agreed to re-review all previously collected documents and to produce all documents responsive to 24 search terms and 11 categories of documents, drafted exclusively by Global. (Rajoo Decl. ¶ 10 & Ex. C, at 1; Glenn Decl., ¶ 21 & Ex. B [Nov. 14, 2014 e-mail from Gene Besen to Andrew Glenn] at 3.)  To further alleviate Global's custodial queries and remove all doubt regarding the discovery disputes, Legends voluntarily undertook the process and cost of restoring backup tapes from the relevant time period, agreeing to produce from the tapes documents responsive to Global's First Request for Production to the Debtors, 24 search terms, and 11 categories.  (Rajoo Decl. ¶ 11.)

Following the re-review and backup tape production, Legends completed an additional significant and voluminous document production, comprised primarily of documents responsive to Global's direct requests that were forged out of the parties' initial meet-and-confer and subsequent correspondence.  Legends' extra efforts to respond comprehensively to Global's discovery queries and bear the cost reflects the good faith of Legends and satisfaction of its document production obligations.  To permit Global further inquiry into Legends' discovery strategy would constitute harassment and undue burden.

### 2.  The Document Custodian Deposition will result in significant burden and expense.

Global's 30(b)(6) deposition, as noticed, will result in significant burden and expense outweighing any potential benefit, considering the particulars of this case.  Fed. R. Civ. P. 26(b)(2)(C).  Legends is an entity that was in bankruptcy until fairly recently.  Global has noticed this superfluous deposition *before* taking (or even attempting to schedule) a single deposition of *any* Legends witness.  Indeed, any lingering issues about the document collection process could

17

and should be directed at counsel, who supervised the document production process.  Legends should not be required to incur the expense of this deposition at this stage in the litigation, particularly considering the expenses it has already incurred in going above and beyond its discovery obligations to placate a party whose primary interest is in delay, not resolution, of the case.

In the unlikely event that Global conducts depositions of Legends witnesses that do not satisfy it that Legends has met its discovery obligations with respect to preservation and collection, Global should at that time present that record to the Court for its consideration of a special deposition examining Legends' efforts.  Further, if it were the case that Legends failed to meet its preservation and collection obligations -- and it is not -- then Global's recourse would not be to file a motion to compel and the remedy is not and cannot be indefinite delay of this litigation.

### 3.   Global seeks information that is privileged.

A party is "entitled to know what kinds and categories of [electronic stored information an opposing party was] instructed to preserve and collect, and what specific actions [that party was] instructed to undertake to that end."  *Cannata v. Wyndham Worldwide Corp.*, No.2:10-CV-00068, 2011 WL 3495987, at *2 (D. Nev. Aug. 10, 2011).  A party is not required, however, to produce information regarding discovery efforts where it is protected by the attorney-client privilege or the work-product doctrine.  *Id.* at *2.  For example, litigation hold letters are frequently privileged because they contain attorney-client work product.  *See, e.g.*, *Major Tours, Inc. v. Colorel*, Civ. No. 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (noting that practice of requiring parties to produce litigation hold letters would dissuade companies from issuing these letters in first instance).

As a Texas court has held regarding offensive discovery depositions, "[t]his subject

18

necessarily and almost exclusively concerns the 'mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives' and consists of the 'attorney's representative's mental impressions, opinions, conclusions, or legal theories' subject to protection as work product and core work product." *In re Exxon Corp.*, 208 S.W.3d 70, 75 (Tex. Ct. App. 2006) (applying Texas discovery rules).  In *Exxon*, as here, "it cannot reasonably be argued in this Court that the anticipated deponent is not one of [the party's] attorneys." *Id.* at 76. The knowledgeable representative regarding Legends' document production would indeed be counsel for Legends, who responded to Global's requests for production.  "Compelling an attorney of record involved in the litigation of the case to testify concerning the suit's subject matter generally implicates work product concerns." *In re Baptist Hosps.*, 172 S.W.3d 136, 140 (Tex. Ct. App. 2005) (applying Texas work product law).  Here, as in *Exxon*, "the discovery is being conducted into how [a party] conducted this litigation . . . .  This inquiry is designed to inquire into mental processes of counsel and is not reasonably calculated to lead to the discovery of admissible evidence." *In re Exxon Corp.*, 208 S.W.3d at 76.

Much of the information that Global seeks falls under the attorney-client privilege or work product doctrine.  For example, Global seeks information concerning Legends' efforts to preserve documents potentially relevant to this litigation," "efforts to collect and produce documents responsive to Global Gaming's First Request for Production to Debtors," "efforts undertaken to identify relevant custodians," and "decision to restore backup tapes. (Glenn Decl. ¶ 4 & Ex. A)  Global may not use a Rule 30(b)(6) deposition to tour Legends' discovery approach and invade Legends' attorney-client privilege.

## CONCLUSION AND PRAYER FOR RELIEF

Legends respectfully requests that the Court compel Global to proceed immediately with

19

depositions and quash the Document Custodian Deposition or, in the alternative to quashing, enter a Protective Order limiting it to relevant topics.

Dated: January 9, 2015

Respectfully submitted,

BY:  */s/ Andrew K. Glenn*
Andrew K. Glenn (admitted *pro hac vice*)
Shalini Kisten Rajoo (admitted *pro hac vice*)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
aglenn@kasowitz.com
srajoo@kasowitz.com

William H. Patrick, III, La. Bar No. 10359
Barry W. Miller, La. Bar No. 9678
HELLER, DRAPER, PATRICK
 & HORN, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Telephone:  (504) 299-3300
bmiller@hellerdraper.com

*Attorneys for Defendants and Counter-Claim Plaintiffs, Legends*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2015, I electronically transmitted the foregoing document to the Clerk of the Court for the U.S. District Court, Western District of Louisiana, using the electronic filing system of the Court. A Notice of Electronic Filing was transmitted to all ECF registrants as authorized by Federal Rule of Civil Procedure 5(b)(2)(E).

_/s/ Andrew K. Glenn_____

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 17, 2014, January 8, 2015, and several times in between, counsel for Legends conferred with counsel for Global in an effort to resolve this dispute. Legends does not agree with Global's position on whether the noticed topics for 30(b)(6) deposition are relevant and not privileged and therefore the parties could not agree on this issue, requiring this Motion.

_/s/ Andrew K. Glenn_____